UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
LAWRENCE DOBROFF,

                             Plaintiff,               Docket No. 21-cv-01567(DRH)(ST)

         -against-

HEMPSTEAD UNION FREE SCHOOL
DISTRICT, HEMPSTEAD UNION FREE
SCHOOL DISTRICT SCHOOL BOARD, RANDY
STITH, individually and in his official capacity, and
REGINA ARMSTRONG, individually and in her
official capacity,

                             Defendants.
---------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PURSUANT TO FRCP RULE 12(b)(6)**


THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

THE PLAINTIFF'S AMENDED COMPLAINT SHOULD BE
DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION .......................... 1

  A.  Plaintiff's First Cause Of Action For Racial Discrimination Must
     Be Dismissed ...................................................................................................... 1

    1.  Racial and Religious Discrimination Pursuant To 42 U.S.C. §
       1983 ............................................................................................................ 3

       a.  *Race Discrimination* ........................................................................ 4

       b.  *Religious Discrimination* ................................................................. 4

    2.  Retaliation Claim Pursuant To 42 U.S.C. § 1983 ..................................... 7

       a.  *Letter to Commissioner of Education* ............................................. 7

       b.  *Email To Stith About Anti-Semitic Responses* ............................. 10

  B.  Plaintiff's Second Cause Of Action For Equal Protection Must Be
     Dismissed .......................................................................................................... 11

  C.  Plaintiff's Third Cause Of Action For Direct Participation And
     Aiding And Abetting Of Individual Defendants Must Be
     Dismissed .......................................................................................................... 13

    1.  There Are No Allegations Asserted Against Armstrong Of Direct
       Participation Or Aiding And Abetting ....................................................... 14

    2.  The Allegations Against Stith Are Insufficient To Plausibly State
       A Claim Against Him For Direct Participation Or Aiding And
       Abetting ..................................................................................................... 14

  D.  No Allegations Support *Monell* Claims ........................................................... 17

CONCLUSION ......................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Anthony v. City of NY*, 339 F.3d 129, 139 (2d Cir. 2003) ............................................................. 19

*Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007).................................................................... 1

*Bermudez v. City of NY*, 783 F.Supp.2d 560, 574-575 (S.D.N.Y. 2011) ....................................... 3

*Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir 1996) ......................................................................... 13

*Casio v. Vines*, 2021 US Dist LEXIS 25115, at *3 (E.D.N.Y. 2021) ......................................... 11

*Connick v. Myers*, 461 U.S. 138, 147 (1983) ........................................................................... 9, 10

*DeFilippo v. NY State Unified Ct. Sys.*, 223 F App'x 45, 45 (2d Cir 2007)................................. 10

*Ferlito v. County of Suffolk*, 2012 US Dist LEXIS 127028, at *5-8
(E.D.N.Y. 2012) ............................................................................................................................ 17

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir 2013) ................................................................... 15

*Kohutka v. Town of Hempstead*, 994 F.Supp.2d 305, 316-317 (E.D.N.Y.
2014)................................................................................................................................................ 3

*Lubetsky v. Applied Card Sys.*, 296 F.3d 1301, 1306 (11th Cir 2002) .................................... 6, 15

*Philippeaux v. Fashion Inst. of Tech.*, 1996 US Dist LEXIS 4397, at *16
(S.D.N.Y. 1996)............................................................................................................................... 8

*Roslyn Union Free Sch. Dist. v. Barkan*, 16 N.Y.3d 643 (2011) ............................................... 16

*S.W. v. City of NY*, 46 F.Supp.3d 176, 189 (E.D.N.Y. 2014) ................................................ 15, 16

*Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir 1993).............................. 9, 10

*Schwartz v. Brown*, 857 F.Supp. 291, 299 (S.D.N.Y. 1994) ....................................................... 13

*Troeger v. Ellenville Cent. Sch. Dist.*, 2016 US Dist LEXIS 127652, at
*33-34 (N.D.N.Y. 2016)................................................................................................................ 12

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir 2015) ............................. 1, 2

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 795 (2d Cir 2019)..................................................................................................................... 6

*Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82-83 (2d Cir 2005)................................................. 6

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Defendants HEMPSTEAD UNION FREE SCHOOL DISTRICT ("District"), HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD ("Board"), RANDY STITH ("Stith"), and REGINA ARMSTRONG ("Armstrong") (collectively referred to as "Defendants") in support of their Motion to Dismiss the Amended Complaint filed by the Plaintiff LAWRENCE DOBROFF ("Plaintiff").

The Plaintiff has failed to state a cause of action and the Amended Complaint must be dismissed pursuant FRCP Rule 12(b)(6). The Plaintiff asserts three causes of action: (1) racial discrimination and retaliation pursuant to 42 U.S.C. § 1983; (2) equal protection under the 14th Amendment, pursuant to 42 U.S.C. § 1983; and (3) direct participation and aiding and abetting discrimination and retaliation in violation of 42 U.S.C. § 1983. *See,* **Exhibit A**, a copy of the Amended Complaint, at ¶¶ 20 through 25.

As discussed at length in this Memorandum of Law, the Plaintiff has failed to adequately plead his causes of action, by failing to plead sufficient facts to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007) (holding "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Accordingly, the Plaintiff's Amended Complaint must be dismissed.

## THE PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION

### A.     Plaintiff's First Cause Of Action For Racial Discrimination Must Be Dismissed

In *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir 2015), the Court held:

1

to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision. As we have long recognized, the ""ultimate issue" in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," *i.e.*, a discriminatory reason." *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997)). A plaintiff can meet that burden through direct evidence of intent to discriminate, *see, e.g., Stratton*, 132 F.3d at 878 & n.4, or by indirectly showing circumstances giving rise to an inference of discrimination, *see, e.g., Tolbert v. Smith*, 790 F.3d 427, 436-37 (2d Cir. 2015). A plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover" up discrimination, *see, e.g., Fisher v. Vassar Coll.*, 114 F.3d 1332, 1334 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998), or by otherwise creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination, *Gallagher*, 139 F.3d at 342. At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *See Littlejohn*, 2015 U.S. App. LEXIS 13475, 2015 WL 4604250, at \*7 (requiring facts "suggesting an inference of discriminatory motivation").

Further, in *Vega v Hempstead Union Free Sch. Dist.*, 801 F.3d at 88, the Court held in "a § 1983 motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim and that the adverse action was taken by someone acting 'under color of state law.'"

The Plaintiff alleges that the "Defendants subjected Plaintiff to disparate treatment on the basis of his religion, unlawfully discriminating against Plaintiff in the terms and conditions of his employment on the basis of his race, and retaliated against Plaintiff in violation of 42 U.S.C. § 1983." **Exhibit A,** at § 21.

Despite the allegations contained in this single paragraph, the Plaintiff has failed to plead sufficient allegations to set forth a plausible cause of action for discrimination based upon race, religion, or that he was retaliated against.   Accordingly, the Plaintiff's Amended Complaint must be dismissed.

1.      Racial and Religious Discrimination Pursuant To 42 U.S.C. § 1983

In *Kohutka v. Town of Hempstead*, 994 F.Supp.2d 305, 316-317 (E.D.N.Y. 2014), the Court opined:

> Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

In *Bermudez v. City of NY*, 783 F.Supp.2d 560, 574-575 (S.D.N.Y. 2011), the Court opined:

> Employment discrimination claims under 42 U.S.C. § 1983, whether based on race, religion, or gender, are analyzed under the *McDonnell Douglas* framework. *See Boykin v. Key Corp.,* 521 F.3d 202, 213 (2d Cir. 2008). Bermudez must allege the following four elements: (1) she falls within a protected class, (2) she was performing her duties satisfactorily, (3) she was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

> Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination" in order to survive a motion to dismiss, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), Bermudez must allege sufficient facts showing that she is entitled to relief. *See, e.g., Alleyne v.*

*American Airlines, Inc.*, 548 F.3d 219, 221 (2d Cir. 2008); *Leibowitz v. Cornell University*, 445 F.3d 586, 591 (2d Cir. 2006).

When the defendant sued for discrimination under § 1983 is a municipality or an individual sued in his official capacity, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom. *See Patterson v. County of Oneida*, 375 F.3d 206, 225-227 (2d Cir. 2004) (citing *Jett v. Dallas Independent School District*, 491 U.S. at 733-36; *Monell v. Department of Social Services*, 436 U.S. 658, 692-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)) (internal citations omitted).

a.      *Race Discrimination*

The Plaintiff's allegations of race discrimination are completely absent.   The only allegation of race discrimination is that the Plaintiff alleges he is Caucasian.  *See,* **Exhibit A**, at ¶ 2.

There are no other allegations in the Plaintiff's Amended Complaint that the Court can use to infer race discrimination.  The Plaintiff failed to plead any allegations that can be used to infer that the Plaintiff's termination occurred under circumstances giving rise to an inference of unlawful discrimination based upon the Plaintiff's race.

Accordingly, the Plaintiff has failed to plead sufficient allegations to plausibly state a cause of action for race discrimination pursuant to 42 U.S.C. § 1983.

b.      *Religious Discrimination*

The Plaintiff's allegations of religious discrimination are insufficient to permit the Court to infer that the Plaintiff was terminated under circumstances giving rise to an inference of unlawful discrimination based upon the Plaintiff's religion.

The Plaintiff's allegations concerning religion are as follows:

(a)     The Plaintiff witnessed constituents making numerous anti-Semitic comments about the former Superintendent of Schools Shimon Waronker ("Waronker"), alleging that "constituents mad[e] numerous anti-Semitic comments" saying "Jews don't belong" and "we don't want Jews here". **Exhibit A**, at ¶ 8.

(b)     The Plaintiff was offended by the remarks made by "constituents" "as a practicing Jew". **Exhibit A**, at ¶ 8.

(c)     "The school board did nothing to stop or dissuade the torrent of anti-Semitic remarks." **Exhibit A**, at ¶ 8.

(d)     "The anti-Semitic remarks occurred at all board meetings with the school board repeatedly turning a blind eye towards them." **Exhibit A**, at ¶ 8.

(e)     In September 2017 Stith entered the Plaintiff's office and Stith "repeatedly said to Plaintiff that Waronker 'did not belong' in the district, indicating that the fact that Waronker was white and Jewish meant he didn't belong. Plaintiff was offended by these remarks as he is also white and Jewish." **Exhibit A**, at ¶ 9.

(f)     In October 2017, Jack Bierworth ("Bierworth") was appointed by the Commissioner of Education to oversee the District. The Plaintiff alleges that Bierworth waited for Waronker to be out of the district for religious reasons and then held a meeting to immediately undermine Waronker. *See,* **Exhibit A**, at ¶ 10.

(g)     "The board also attacked Waronker for not being present on December 30, 2017 despite knowing Waronker was out due to his Jewish faith." **Exhibit A,** at ¶ 13.

(h)     "Stith sent emails to Plaintiff stating "we are watching you" in January 2018." **Exhibit A**, at ¶ 14.

(i)     "Plaintiff responded to Stith and brought to Stith's attention his anti-Semitic responses on January 9, 2018." **Exhibit A**, at ¶ 14.

(j)     "Plaintiff returned the last week in February 2018. When he returned, the district's special counsel was waiting for Plaintiff to discuss Stith's anti-Semitic remarks." **Exhibit A**, at ¶ 17.

The Plaintiff's allegations concerning religious discrimination fail for three reasons:

First, the Plaintiff does not allege that the decisionmakers, the members of the District's Board of Education, knew that he is Jewish.

"[A]n employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion." *Lubetsky v. Applied Card Sys.*, 296 F.3d 1301, 1306 (11th Cir 2002).

In an age discrimination case, the Court in *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82-83 (2d Cir 2005), the Court held: "where a defendant asserts that the record fails to indicate the requisite awareness, a plaintiff must adduce some evidence, whether direct or indirect, indicating a defendant's knowledge as to the relative ages of the persons compared."

The principle contained in Woodman applies here as well, namely that given the Plaintiff's failure to allege that the decisionmakers had actual knowledge of the Plaintiff's Jewish religion, the Plaintiff cannot plausibly state a claim for religious discrimination against the District.

Second, the statements made by the District's "constituents" were not made by the District and therefore cannot constitute allegations supporting a claim for religious discrimination by the District. The Plaintiff does not allege: (1) that he complained to anyone about the statements made by the District's "constituents" at Board meetings; (2) that he communicated with anyone that the statements made by the District's "constituents" offended him; (3) that the statements were directed at the Plaintiff; nor (4) that the "constituents" knew that he was Jewish.

Additionally, the Second Circuit in *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 795 (2d Cir 2019) rejected the allegation that "public abuse and humiliation" stemming from comments made by members of the public at the District's School Board meeting were sufficient to state a claim for a stigma-plus liberty interest claim

Similarly, comments made by members of the public cannot constitute religious discrimination by the District. The Plaintiff has not alleged that the "constituents" were in any

way attributable to any of the individuals Defendants or even the District.  The Plaintiff does not allege that these statements made by members of the public are traceable to the Defendants.

Finally, the Plaintiff does not allege that he complained to anyone about the comments made by the members of the public at public Board meetings.

Third, the allegations of religious discrimination fail to palpably plead a claim for religious discrimination.  The Plaintiff does not plead sufficient facts to enable the Court to infer that the Plaintiff's termination occurred under circumstances giving rise to an inference of unlawful discrimination based upon the Plaintiff's religion.  The Plaintiff does not plead any facts that the Court can infer that his religion had any causal connection to the his termination.

Accordingly, the Court should dismiss the Plaintiff's claim for religious discrimination.

        2.        <u>Retaliation Claim Pursuant To 42 U.S.C. § 1983</u>

The Plaintiff's Amended Complaint does not identify what protected activity he alleges he engaged in for which he was retaliated against.

Reviewing the Amended Complaint, there are two allegations that may constitute allegations of protected activity, but the Plaintiff's allegations regarding each of the potential protected activities are insufficient to state a claim for retaliation.

        a.        *Letter to Commissioner of Education*

The Plaintiff alleges that he "sent a complaint to MaryEllen Elia, the New York State commissioner of education against Stith's behavior on or about February 12, 2018." **Exhibit A,** at ¶ 15.

The Plaintiff has failed to allege that anyone within the District, let alone any of the decisionmakers, knew about his letter to the Commissioner of Education, thus that there was a causal connection between the speech and the Plaintiff's termination.

"A First Amendment retaliation claim does not exist where the defendants had no knowledge of the allegedly protected speech." *Kilduff v. Rochester City Sch. Dist.*, 53 F.Supp.3d 610, 617 (W.D.N.Y. 2014).

In *Philippeaux v. Fashion Inst. of Tech.*, 1996 US Dist LEXIS 4397, at *16 (S.D.N.Y. 1996), the Court held

> [i]n order to prevail on his retaliation claims, Philippeaux must prove that FIT had actual knowledge that he was engaged in protected activity. *DeCintio,* 821 F.2d at 115; *Halpern,* 768 F. Supp. at 985. Philippeaux must demonstrate not only that FIT as an entity knew of his engagement in the protected activity, but also that the actual decisionmaker(s) knew about it as well. *See Almendral v. New York State Office of Mental Health* 568 F. Supp. 571, 576 (S.D.N.Y. 1983), *aff'd in relevant part,* 743 F.2d 963 (2d Cir. 1984) (dismissing retaliation claim when supervisor's poor evaluation was prepared before supervisor knew that plaintiff had filed a discrimination charge); *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 797 (9th Cir. 1982) (dismissing retaliation claim when decisionmaker had no knowledge that employee was engaged in protected activity).

If the people who voted for the Plaintiff's termination did not know about the Plaintiff's letter to the Commissioner of Education, then that letter (or Plaintiff's speech) could not have been a motivating factor in their decision to terminate the Plaintiff. Accordingly, the Plaintiff cannot state a cause of action for First Amendment retaliation.

Additionally, the Plaintiff alleges he wrote to the Commissioner of Education "about Stith's behavior", presumably his anti-Semitic remarks. **Exhibit A,** at ¶ 15. The complaint to the Commissioner is not a matter of public concern but a matter of private concern that the Plaintiff had about his workplace.

In *Connick v. Myers*, 461 U.S. 138, 147 (1983), the Court held:

> when a public employee speaks not as a citizen upon matters of
> public concern, but instead as an employee upon matters only of
> personal interest, absent the most unusual circumstances, a federal
> court is not the appropriate forum in which to review the wisdom of
> a personnel decision taken by a public agency allegedly in reaction
> to the employee's behavior.

In *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir 1993), the Court held:

> Had Saulpaugh's complaints to her supervisors implicated system-
> wide discrimination they would have unquestionably involved a
> matter of "public concern." *See Marshall v. Allen*, 984 F.2d 787 (7th
> Cir. 1993) (allowing Section 1983 claim where plaintiff was
> discharged following his support of other employees who had filed
> suit for gender discrimination); *Wilson v. UT Health Ctr.*, 973 F.2d
> 1263, 1266 (5th Cir. 1992) (upholding Section 1983 claim where
> plaintiff's complaints concerned the routine use of sexually
> suggestive language by police officers toward all female officers as
> well as systemic instances of other forms of sexual harassment),
> *cert. denied*, 113 S. Ct. 1644 (1993); *Auriemma v. Rice*, 910 F.2d
> 1449, 1460 (7th Cir. 1990) (in banc) (finding public interest where
> there was a "wholesale change in the highest police echelons
> allegedly only on a racial basis"), *cert. denied*, 115 L. Ed. 2d 970,
> 111 S. Ct. 2796 (1991). Here, however, there has been no violation
> of the First Amendment, because Saulpaugh's complaints were
> "personal in nature and generally related to her own situation."
> *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 781 (2d
> Cir. (holding that resident's complaints about aspects of residency
> program that negatively affected her did not implicate matters of
> public concern), *cert. denied*, 112 S. Ct. 657 (1991). In the instant
> case there is no indication that the plaintiff "wanted to debate issues
> of sex discrimination," that her suit sought "relief against pervasive
> or systemic misconduct by a public agency or public officials," or
> that her suit was "part of an overall effort . . . to correct allegedly
> unlawful practices or bring them to public attention." *Yatvin v.
> Madison Metro. School Dist.*, 840 F.2d 412, 420 (7th Cir. 1988)
> (holding that plaintiff had failed to state a claim for relief under
> Section 1983). Although evidence was subsequently uncovered that
> Rosemond had also sexually harassed a prior employee,
> Saulpaugh's complaints, like those of the plaintiffs in *Ezekwo* and
> *Yatvin*, were motivated by and dealt with her individual employment

situation. *See also Altman v. Hurst*, 734 F.2d 1240, 1244 (7th Cir.), *cert denied*, 105 S. Ct. (1984).

In *DeFilippo v. NY State Unified Ct. Sys.*, 223 F App'x 45, 45 (2d Cir 2007), the Court opined "DeFilippo's Equal Employment Opportunity ("EEO") complaints were not on a matter of public concern."

In this Action, the Plaintiff does not allege that his letter to the Commissioner of Education sought relief from pervasive or systemic anti-Semitism or to correct unlawful practices or bring them to public attention.  Clearly, the Plaintiff alleges that the letter to the Commissioner of Education was "about Stith's behavior" towards the Plaintiff, a personal concern.

Accordingly, the Plaintiff's speech contained in the letter to the Commissioner was a matter of private concern, not a public concern and therefore is not protected by the First Amendment. The Court should dismiss the Plaintiff's claim for retaliation based upon the Plaintiff's letter to the Commissioner of Education.

b.    *Email To Stith About Anti-Semitic Responses*

The second potential claim of protected activity alleged in the Plaintiff's Amended Complaint is an email the Plaintiff sent to Stith bringing "to Stith's attention his anti-Semitic responses...." **Exhibit A**, at ¶ 14.

Again, the speech was personal in nature and not a matter of public concern since the Plaintiff complained about how *he* was treated and not about pervasive or systemic anti-Semitism in the District. *See, Connick v. Myers*, 461 U.S. at 147; *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d at 143; *DeFilippo v. NY State Unified Ct. Sys.*, 223 F App'x at 45.

Accordingly, the speech contained in the Plaintiff's email to Stith is not protected by the First Amendment.  Therefore, the Plaintiff does not state a cause of action for First Amendment retaliation based upon the Plaintiff's email to Stith.

*************

The Plaintiff has failed to state a cause of action for discrimination or retaliation pursuant to 42 U.S.C. § 1983, failing to allege sufficient facts to allow the Court to plausibly infer that the Defendants have violated the Plaintiff's constitutional rights.

Accordingly, the Plaintiff's First Cause of Action should be dismissed.

### B.   Plaintiff's Second Cause Of Action For Equal Protection Must Be Dismissed

In *Casio v. Vines*, 2021 US Dist LEXIS 25115, at *3 (E.D.N.Y. 2021), the Court opined:

> To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. *Twombly,* 550 U.S. at 556. When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006).

The Plaintiff has failed to meet this standard with respect to the Plaintiff's Second Cause of Action.

The Plaintiff alleges that

> the actions and mistreatment of Plaintiff by all Defendants violate the Equal Protection Clause to the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983, because such acts were taken in accordance with Defendants' custom or practice of discriminating and/or selectively treating individuals. These

11

practices were so persistent and widespread that they constitute constructive acquiescence of the policymakers in violation of 42 U.S.C. § 1983.

**Exhibit A,** at ¶ 23.

In *Troeger v. Ellenville Cent. Sch. Dist.*, 2016 US Dist LEXIS 127652, at *33-34 (N.D.N.Y. 2016) the Court opined:

> To state an equal protection claim, a plaintiff must allege "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)). Here, Plaintiff's equal protection claim fails because, apart from conclusory allegations that other, unidentified individuals were "similarly situated," he has not specifically alleged that any similarly situated individuals were treated differently than he was. *See Richard v. Fischer*, 38 F. Supp. 3d 340, 354 (W.D.N.Y. 2014) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)) ("To allege a violation of the Equal Protection Clause, 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently'"); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) (quotation omitted) ("[W]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim"). Accordingly, Defendant's motion is granted on this ground and Plaintiff's equal protection claim is dismissed.

Nowhere in the Plaintiff's Amended Complaint does the Plaintiff identify how the Plaintiff was selectively treated or when and how he was treated differently from any other similarly situated employee.

The Plaintiff does not even allege that there were any employees similarly situated to him while the Plaintiff was employed by the District. The District suggests that as the only Assistant

Superintendent for Business and Operations (**Exhibit A**, at ¶ 7), there were no other similarly situated employees and therefore, there was no other person to whom the Plaintiff can compare his treatment to during his employment with the District.

While the Plaintiff uses the phrase "customs and practices of the District", the Plaintiff does not identify any custom or practice of the District that resulted in the discrimination against anyone, including the Plaintiff.

Additionally, the Plaintiff does not identify how the Plaintiff was singled out in any way and how the alleged selective treatment was motivated by an intent to discriminate against the Plaintiff on impermissible grounds, whether it was the Plaintiff's race or religion. *See, Schwartz v. Brown*, 857 F.Supp. 291, 299 (S.D.N.Y. 1994).

The Plaintiff does not allege any facts to plausibly state a claim for a violation of the Equal Protection Clause.

Accordingly, the Plaintiff's Second Cause of Action should be dismissed.

### C.  Plaintiff's Third Cause Of Action For Direct Participation And Aiding And Abetting Of Individual Defendants Must Be Dismissed

In *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir 1996), the Court held:

> a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority. *See, e.g.*, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Leonhard v. United States*, 633 F.2d 599, 621 n.30 (2d Cir. 1980) (claim based on respondeat superior not cognizable under § 1983), *cert. denied*, 451 U.S. 908, 68 L. Ed. 2d 295, 101 S. Ct. 1975 (1981). We have construed personal involvement for these purposes to mean direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates. *See Wright v. Smith*, 21 F.3d at 501.

13

The Plaintiff names two individual defendants who he alleges directly participated in or aided and abetted the discrimination alleged in his Amended Complaint. However, the Plaintiff fails to allege any facts that plausibly sets forth a claim against either individual for direct participation or aiding and abetting.

1.     <u>There Are No Allegations Asserted Against Armstrong Of Direct Participation Or Aiding And Abetting</u>

The Plaintiff's allegation against Armstrong is a single allegation that she was in attendance when there was an inspection of a burst pipe on December 30, 2017. *See,* **Exhibit A,** at ¶ 12.

Other than identifying her as a defendant in this Action and alleging she is a policymaker of the District (**Exhibit A**, at ¶ 5), there are no other allegations against Armstrong in the entire Amended Complaint.

The single allegation that Armstrong was in attendance when a pipe burst on December 30, 2017 is insufficient to state a cause of action against her for either direct participation or aiding and abetting discrimination.

Accordingly, Armstrong should be dismissed from this Action.

2.     <u>The Allegations Against Stith Are Insufficient To Plausibly State A Claim Against Him For Direct Participation Or Aiding And Abetting</u>

The Plaintiff names Stith as a Defendant alleging that:

(a)     In September 2017 Stith entered the Plaintiff's office and Stith "repeatedly said to Plaintiff that Waronker 'did not belong' in the district, indicating that the fact that Waronker was white and Jewish meant he didn't belong. Plaintiff was offended by these remarks as he is also white and Jewish." **Exhibit A,** at ¶ 9.

(b)     "Stith sent emails to Plaintiff stating "we are watching you" in January 2018." **Exhibit A,** at ¶ 14.

14

(c) "Plaintiff responded to Stith and brought to Stith's attention his anti-Semitic responses on January 9, 2018." **Exhibit A**, at ¶ 14.

(d) "Plaintiff returned the last week in February 2018. When he returned, the district's special counsel was waiting for Plaintiff to discuss Stith's anti-Semitic remarks." **Exhibit A**, at ¶ 17.

The Plaintiff's allegation that Stith's comment about Waronker that Waronker, not the Plaintiff, "did not belong" in the District was in some way an anti-Semitic statement is a stretch and in any event, the statement was not made about the Plaintiff but about a different employee.

The Plaintiff does not allege that in September 2017, Stith knew that the Plaintiff was Jewish.

"[A]n employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion." *Lubetsky v. Applied Card Sys.*, 296 F.3d at 1306.

Accordingly, the September 2017 statement claimed to have been made by Stith does not plausibly state a claim against Stith for direct participation or aiding and abetting.

Additionally, the September 2017 claimed statement may not be used as a basis for direct participation or aiding or abetting by Stith since the three-year statute of limitations on the claim expired. *See, Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir 2013).

The Plaintiff commenced this Action on March 24, 2021 (Docket Entry No. 1) more than three years after the conversation between Stith and Plaintiff. *See, S.W. v. City of NY*, 46 F.Supp.3d 176, 189 (E.D.N.Y. 2014) (holding "The statute of limitations for plaintiffs' § 1983 claims is thus three years.").

Whether timely or not, the single conversation in September 2017 between Stith and Plaintiff does not plausibly state a claim against Stith for direct involvement or aiding and abetting.

The Plaintiff's allegation that Stith's emails to Plaintiff stating that "we are watching you" was in anyway anti-Semitic is wholly unreasonable. The Plaintiff does not even allege that the phrase, "we are watching you" is anti-Semitic.

In fact, Stith, as a member of the District's Board of Education had a fiduciary duty to make sure the Plaintiff as the District's Assistant Superintendent of Business and Operations (**Exhibit A**, at ¶ 7) was doing his job managing the District's finances. *See, Roslyn Union Free Sch. Dist. v. Barkan*, 16 N.Y.3d 643 (2011).

The Plaintiff's January 9, 2018 response to Stith, bringing to Stith's attention Stith's alleged anti-Semitic responses cannot be direct participation or aiding and abetting by Stith, since the January 9, 2019 response was the Plaintiff's conduct, not Stith's conduct. *See,* **Exhibit A**, at ¶ 14. In addition, the January 9, 2018 event was more than three years before the filing of this Action. *See, S.W. v. City of NY*, 46 F.Supp.3d at 189.

Finally, the Plaintiff's allegation that when he returned from his high blood pressure issues, the District's special counsel investigated the Plaintiff's claims of anti-Semitic remarks by Stith cannot be direct participation or aiding and abetting by Stith, was the proper and appropriate process under the District's anti-discrimination policy. The District investigated the Plaintiff's claims of discrimination by Stith. *See,* **Exhibit B**, a copy of the District's anti-discrimination policy. If the District did not investigate it would have been violating its own policy and the Plaintiff would have alleged that the District failed to investigate.

Accordingly, there are no allegations contained in the Plaintiff's Amended Complaint that plausibly state a claim against Stith for direct participation or aiding and abetting discrimination against the Plaintiff. Stith should be dismissed from this Action.

*********************

The Plaintiff fails to state a cause of action against Armstrong or Stith.  Accordingly, the Defendants' Motion to Dismiss pursuant to FRCP Rule 12(b)(6) should be granted and Armstrong and Stith should be dismissed from this Action.

### D.   No Allegations Support *Monell* Claims

In *Ferlito v. County of Suffolk*, 2012 US Dist LEXIS 127028, at *5-8 (E.D.N.Y. 2012) the Court held:

> A municipality may not be held liable under section 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations. *See Monell*, 436 U.S. at 691; *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decisionmaking channels." *Monell*, 436 U.S. at 690-91. Therefore,
>
> > a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.
>
> *Id.* at 694 (quoted by *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005)).
>
> The existence of a municipal policy or custom may be established in any of the following four ways. A plaintiff may demonstrate that his or her constitutional injuries arose from: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who

17

come in contact with the municipal employees." *Williams v. City of Mt. Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)); *see also Bonds v. Suffolk County Sheriff's Dep't*, 2006 U.S. Dist. LEXIS 93607 (E.D.N.Y. Dec. 5, 2006) (same); *Peterson v. Tomaselli*, 2004 U.S. Dist. LEXIS 19765, 2004 WL 2211651, at *9 (S.D.N.Y. Sept. 30, 2004) (same).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). "Where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). A showing of deliberate indifference in this context entails three parts:

> (1) [that the] policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) [that] either [the] situation presents employees with [a] difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) [that the] wrong choice by employees will frequently cause deprivation of constitutional rights.

*County of Erie*, 654 F.3d at 334 (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

The Plaintiff does not cite in his Amended Complaint any District policy that violated his constitutional rights. *See,* **Exhibit A**.

The Plaintiff does not identify any person who is a policymaker or a person with final decision-making authority in the District who violated the Plaintiff's constitutional rights.

> Actions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, 89

18

L. Ed. 2d 452, 106 S. Ct. 1292 (1986). The individual must "be responsible for establishing final government policy" in order for municipal liability to attach. *Id.* at 483.

*Anthony v. City of NY*, 339 F.3d 129, 139 (2d Cir. 2003).

Accordingly, the Plaintiff's allegations against the District are insufficient as a matter of law to defeat a Motion to Dismiss because the Plaintiff has failed to plausibly plead a District policy or custom that served as a basis for a violation of the Plaintiff's civil rights.

Accordingly, any claims by the Plaintiff against the District should be dismissed.

## CONCLUSION

For the reasons argued in this Memorandum of Law, the Defendants' Motion to Dismiss should be granted and the Plaintiff's Amended Complaint should be dismissed.

Dated:        Carle Place, New York
              July 8, 2021

                                        Respectfully submitted

                                        THE SCHAR LAW FIRM, LLP

                                        _____
                                        Austin Graff
                                        *Attorneys for the Defendants*
                                        One Old Country Road, Suite 385
                                        Carle Place, New York 11514
                                        (516) 746-5040