# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X **Index No.:** 21-1567-DJH-ST
LAWRENCE DOBROFF,

Plaintiff,

**AMENDED**
**COMPLAINT**

     -against -

HEMPSTEAD UNION FREE SCHOOL DISTRICT,
HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL
BOARD, RANDY STITH, individually and in his
official capacity, and REGINA ARMSTRONG, individually and in
her official capacity,

Defendants.
-------------------------------------------------------------------------------X

Plaintiff, LAWRENCE DOBROFF, by and through his attorneys, Law Offices of Alan J.

Sasson by Jonathan Tand, Esq., respectfully alleges upon knowledge as to himself and his own

actions, and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT OF CLAIMS**

1. This is a civil action wherein Plaintiffs seek damages and equitable relief to address
   the pattern and custom of discrimination by Defendants that harmed Plaintiff and other
   white Jewish persons working or enrolled within the Defendant HEMPSTEAD UNION
   FREE SCHOOL DISTRICT together with a declaration that Defendants, all of them,
   violated Plaintiff's constitutional, civil and human rights.

2. Defendants subjected Plaintiff to a Hostile Education Environment, one where there were
   racial slurs made against Plaintiff and encouraged by Defendants, jointly and severally,
   individually and collectively, who fostered, created and maintained a Hostile Work
   Environment against Plaintiff and others similarly situated because of their race/color,
   being a white/Caucasian person ("white") and their national origin, race and creed
   (collectively referred to as being "Jewish"), being a Jew.

1

3. Plaintiff was subject to gun shots, verbal harassment and a Hostile Education/Working Environment yet Defendants had the time from the school massacres at Parkland to those at Santa Fe to act responsibly to protect the rights of religious minorities, such as Jews, or racial minorities in the HEMPSTEAD UNION FREE SCHOOL DISTRICT, here a white male person. See Statistic Atlas, *Race and Ethnicity in Hempstead Union Free School District, New York (Unified School District)*, Cedar Lake Ventures, Inc. (last accessed on October 4, 2021), *available at*: https://bit.ly/3lmAAhb.

4. Defendants, individually and collectively, jointly and severally, told the public that its "board of education and the trustees…of every school district shall create policies and guidelines that shall include, but not be limited to: Policies intended to create a school environment that is free from discrimination or harassment." Hempstead Union Free School District, *New York State Dignity For All Students Act New York State Education Law Article 2*, (last accessed on October 5, 2021), available at: https://bit.ly/2YjVLHs.

5. Defendants failed to maintain an environment free from harassment and, in fact, encouraged it in violation of New York State and Federal law and what it represented to the public "to discourage the development of discrimination or harassment…to raise the awareness and sensitivity of school employees to potential discrimination or harassment, and…enable employees to prevent and respond to discrimination or harassment…" *Id.*

6. Defendants, individually and collectively, jointly and severally were required to but failed to instruct their employees and subordinates to address discrimination and prevent the development of a Hostile Education Environment/Work Environment, (Hempstead Union Free School District, *Dignity for All Student Act Staff Handbook,* (last accessed on October 5, 2021), available at: https://bit.ly/3Dic9HO), and failed to provide resources and direction

2

that would foster "the development of a school environment free of discrimination and harassment." Hempstead Union Free School District, *New York's Dignity for All Students Act,* New York State Education Department (last accessed on October 5, 2021), available at: https://bit.ly/3Fqn2sH.

7. This action has been timely commenced within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986 as well as within the applicable statutes of limitations for the pendant state law claims.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and §§ 1343(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights pursuant to the State and Federal Constitutions.

9. On or about July 16, 2018 a Notice of Claim was served upon Defendants and a General Municipal Law § 50-H examination of Plaintiff occurred on or about January 22, 2019.

10. More than ninety (90) days elapsed since January 22, 2019 and Defendants refused to adjust the claim.

11. No other claim for this or such similar relief has been made by the Plaintiff.

## PARTIES

12. Plaintiff LAWRENCE DOBROFF ("Plaintiff" or "DOBROFF"), is a 63 year old Caucasian male, who is a resident and domiciliary of Nassau County, New York.

13. At all times relevant to this complaint, Mr. DOBROFF was an "employee" of Defendants as the term is defined by Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq ("NYSHRL").

3

14. Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT, ("The District") at all times relevant, was and still is a public school district and municipal corporation organized and existing under the laws of the State of New York, with its principal place of business located at 185 Peninsula Blvd, Hempstead, NY, 11550.

15. Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT is required to adhered to the Dignity for all Students Act ("DASA") which "amended Section 801-a of New York State Education Law regarding instruction in civility, citizenship, and character education by expanding the concepts of tolerance, respect for others and dignity to include: an awareness and sensitivity in the relations of people, including but not limited to, different races, weights, national origins, ethnic groups, religions, religious practices, mental or physical abilities, sexual orientations, gender identity, and sexes." Hempstead Union Free School District, *Dignity for All Students*, (last accessed on October 5, 2021), available at: https://bit.ly/3uOA2nm.

16. At all times relevant to this charge, Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT was Plaintiff's "employer" as the term is defined by Title VII and NYSHRL.

17. Upon information and belief, Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT is the recipient of federal funding.

18. Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD, ("The Board") at all times relevant, was and still is an elected body tasked with running and overseeing the District organized and existing under the laws of the State of New York, with its principal place of business located at 185 Peninsula Blvd, Hempstead, NY, 11550.

19. At all times relevant to this litigation, Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD was Plaintiff's "employer" as the term is defined by Title VII and NYSHRL.

20. Defendant REGINA ARMSTRONG ("Armstrong") is an individual who at all relevant times was the acting Superintendent of Schools for the Hempstead Union Free School District and Plaintiff's supervisor.

21. Defendant Armstrong was a "policymaker" of Defendant District as that term is defined by 42 U.S.C. § 1983 and is a "person" as that term is defined by New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

22. Upon information and belief, Defendant Armstrong is a resident and domiciliary of Nassau County, New York.

23. Defendant RANDY STITH ("Stith") is an individual who at all relevant times was a member of the board of education for the Hempstead Union Free School District and Plaintiff's supervisor.

24. Defendant Stith was a "policymaker" of Defendant District as that term is defined by 42 U.S.C. § 1983 and is a "person" as that term is defined by New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

25. Upon information and belief, Defendant Stith is a resident and domiciliary of Nassau County, New York.

26. HEMPSTEAD UNION FREE SCHOOL DISTRICT, HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD, RANDY STITH, individually and in his official capacity, and REGINA ARMSTRONG, individually and in her official capacity are collectively referred to herein as "Defendants".

## FACTUAL ALLEGATIONS

27. Plaintiff was hired on July 27, 2017 as the assistant superintendent of business and operations by then Superintendent Shimon Waronker.

28. Plaintiff did not have any contract with the District, but that was in violation of the State Controller's guidelines.

29. At the time of Plaintiff's employment with the District, none of the District's assistant superintendents had employment contracts.

30. Superintendent Shimon Waronker knew that Plaintiff was a white male Jewish person.

31. Secretaries and others within Defendants' employ quickly learned that Plaintiff was Jewish and Plaintiff did, at times, wear a yarmulke.

32. Plaintiff was responsible in the district for all things finance, managing facilities, food services, transportation etc. His first day of work was August 1, 2017

33. At the first or second school board meeting attended by Plaintiff, he witnessed constituents making numerous anti-Semitic comments about Waronker, saying "Jews don't belong", "we don't want Jews here" and other such comments. As a practicing Jew, Plaintiff was offended by these remarks. The school board did nothing to stop or dissuade the torrent of anti-Semitic remarks. The anti-Semitic remarks occurred at all board meetings with the school board repeatedly turning a blind eye towards them.

34. Randy Stith as part of the school Board addressed and encouraged anti-Semitic comments at public meetings.

35. Randy Stith knew and had reason to know that it was against Defendants' stated policies yet persisted in informing Plaintiff of the custom, pattern, practice and/or usage of discriminating against Jewish persons.

36. As discussed below, Randy Stith did state to Plaintiff a policy statement, ordinance, regulation, or decision, a custom of discrimination, retaliation harm and hostile education environment to white and/or Jewish persons in the HEMPSTEAD UNION FREE SCHOOL DISTRICT and HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD.

37. Upon information and belief, HEMPSTEAD UNION FREE SCHOOL DISTRICT constituents' comments were encouraged if not brought about jointly and individually by Defendants RANDY STITH and/or REGINA ARMSTRONG.

38. Upon information and belief, allege that the decisionmakers, the members of the Defendants HEMPSTEAD UNION FREE SCHOOL DISTRICT and HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD of Education, knew and became aware that Plaintiff was and is Jewish prior to Stith's statements to Plaintiff.

39. Prior to and in September 2017, Randy Stith knew and had reason to know that Plaintiff was a white Jewish person.

40. In September 2017 school board member Randy Stith entered Plaintiff's office. Stith was angry about Waronker being hired as the superintendent.

41. Randy Stith knew Waronker was a Jewish white male.

42. Stith repeatedly said to Plaintiff that Waronker "did not belong" in the district, indicating that the fact that Waronker was white and Jewish meant he didn't belong.

43. Plaintiff was offended by Stith's remarks about Waronker as he is also white and Jewish.

44. Defendant Stith's comments were intentional, stated to Plaintiff to indicate Defendant Stith's animus against white and Jewish persons, and made individually on behalf of Defendant Sith and collectively, on behalf of the Defendant and the District.

7

45. Defendant Stith's comments were made to a white and Jewish person because of the race and color of Plaintiff albeit such comments appear racially neutral otherwise.

46. Plaintiff rebuked Stith's comments, disagreeing with his animus against Waronker and, impliedly, against other similarly situated white Jewish persons.

47. Defendant Stith's comments were not made in the context of job function or fiduciary duty but were made to convey a custom, pattern, practice, trade or usage of discrimination and differential treatment to white persons and/or Jewish persons.

48. In September of 2017, Stith made public comments inclusive of talking about how the superintendent had this meeting on a Sunday which was his Sabbath and why did they have it on a Saturday.

49. Stith stated "That's your Sabbath, and I don't care about your Sabbath" referring to the Jewish observance of Friday evening into Saturday evening.

50. Stith stated this in public and in front of Plaintiff and other persons who, upon information and belief, were of the Jewish Faith.

51. Stith stated "That's your Sabbath, and I don't care about your Sabbath" in the presence of Defendants who did nothing in opposition and adopted the animus publicly stated by Stith and for which Stith entered a crowd of persons and encouraged the animus by increasing his tone, presence and asserting a hostile demeanor.

52. When Stith stated "That's your Sabbath, and I don't care about your Sabbath," there response was a great deal of anti-Semitic comments in the audience that received no admonition or response from the Defendants. Defendants adopted these comments made by the audience, implicit in their silence, in furtherance of the pattern, practice, policy, custom or usage of discrimination by Defendants against white Jewish persons.

53. In October, Jack Bierworth was appointed by the Commissioner of Education to oversee the District.

54. Jack Bierworth waited for Waronker to be out of the district for religious reasons (related to his Jewish religion) and then held a meeting to immediately undermine Waronker.

55. Jack Bierworth, sometimes accompanied by Joe Dragone, also began having meetings with BOCES and others about the business department and intentionally leaving Plaintiff out of the meetings despite Plaintiff being in charge of these affairs for the district.

56. Upon information and belief, Jack Bierworth did intentionally seek to remove Plaintiff from these meetings as with Warnoker because of his Jewish faith.

57. Defendants, individually and collectively, knew and had reason to know that Warnoker was of the Jewish faith and did act, jointly and severally, to exclude observant Jewish persons from events inclusive of the aforementioned meeting to undermine Warnoker.

58. Insofar as Defendants actions were done to exclude Jewish persons, it evidences an intentional and impermissible basis to act and an effort to undermine, harm and subject Jewish persons to an unequal and hostile educational and work setting, as further discussed below, that culminated in Plaintiff suffering adverse employment actions.

59. Things got markedly worse in November of 2017 when the school board changed hands and Lamont Johnson was added to the school board.

60. Upon the addition of Lamont Johnson to the Defendant School Board, the Board immediately set out to remove Waronker and all parties hired by Waronker.

61. Plaintiff received a call about a burst pipe in December 30 2017. He went to take a look at the pipe along with Stith, Armstrong, and Maribel Toure, the acting school board president.

62. The first week in January of 2018, new policies began to be published by the board to eliminate Waronker.

63. Plaintiff attended a board meeting on January 9, 2018 where Waronker was put on administrative leave by the board.

64. On January 9, 2018, the board also attacked Waronker for not being present on December 30, 2017 despite knowing Waronker was out due to his Jewish faith.

65. Defendants, individually and collectively, jointly and severally, did act to deprive Jewish persons, such as Waronker in this instance, of involvement and participation of the benefits of a positive working environment and, in this instance, subjecting Waronker to an adverse employment action.

66. Plaintiff sent electronic mailings to Defendants in January of 2018, including but not limited to Randy Stith protesting the discriminatory remarks made against Jews.

67. Defendant Stith to submit these protestations of discrimination to multiple other people, including Plaintiff, in reply and continuation of differential and derogatory treatment of the Plaintiff because he was a Jew.

68. Upon information and belief, Defendants individually, collectively, jointly and severally did learn of the discrimination made against Plaintiff and other similarly situated persons of the Jewish faith.

69. After Waronker was gone, Stith turned his attention to Plaintiff. Stith sent emails to Plaintiff stating "we are watching you" in January of 2018. Plaintiff responded to Stith and brought to Stith's attention his anti-Semitic responses at January 9, 2018.

70. Defendants, individually and collectively, knew and had reason to know of Stith's comments and the practice of discrimination and encouragement of others to discriminate

that was persistent and widespread among Defendants, HEMPSTEAD UNION FREE SCHOOL DISTRICT and HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD.

71. HEMPSTEAD UNION FREE SCHOOL DISTRICT continues a custom of discrimination, evidenced by Stith's comments to Plaintiff and encouragement of HEMPSTEAD UNION FREE SCHOOL DISTRICT constituents that HEMPSTEAD UNION FREE SCHOOL DISTRICT and the HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD knew and should have known was directed towards white Jewish persons.

72. Defendants, individually and collectively, are tasked with learning, addressing and teaching others to address discrimination but failed to "foster civility in public schools and to prevent and prohibit conduct which is inconsistent with a school's educational mission." Hempstead Union Free School District, *New York State Dignity For All Students Act New York State Education Law Article 2,* (last accessed on October 5, 2021), available at: https://bit.ly/2YjVLHs

73. HEMPSTEAD UNION FREE SCHOOL DISTRICT, Defendants individually and collectively, had constructive knowledge of the discrimination suffered by white/Caucasian people and racial minorities, inclusive of Jewish persons, by members of the HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD and others encouraged by Defendants, individually and collectively, which created a hostile education environment/hostile working environment that Plaintiff endured and reported.

74. The racial discrimination, evidenced by the comments made in public meetings, can be imputed to be part of the policymaking officials in determining who "belongs" and who does not in the HEMPSTEAD UNION FREE SCHOOL DISTRICT.

11

75. The racial discrimination, evidenced by the encouragement of racial animus against Jewish persons made in public meetings by Defendant Stith for which Defendants were complicit in Stith's messages, can be imputed to be part of the policymaking officials in the HEMPSTEAD UNION FREE SCHOOL DISTRICT.

76. Defendants, individually and collectively, knew that of this discriminatory pattern, custom, practice and/or usage of discriminating on the basis of race and color and did nothing to address, ameliorate or change the behaviors that caused harm to Plaintiff and other similarly situated white/Jewish persons.

77. Plaintiff, unnerved by Stith's behavior, sent a complaint to MaryEllen Elia, the New York State commissioner of education about Stith's behavior on or about February 12, 2018.

78. Defendants became aware of the contents of and the letter to New York State Commissioner of Education about Defendant Stith's behavior on or about February 12, 2018 prior to Plaintiff's writing the letter by either bearing witness to the discrimination or speaking to Plaintiff about Defendant Stith's behavior and treatment of Plaintiff together with the encouragement of constituents to act similarly towards Plaintiff and others so unfortunate as to be members of the Jewish race.

79. Defendants, individually and collectively, did not properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of Plaintiff and all other persons so similarly situated.

80. Defendants, individually and collectively, knew and had reason to know that its failure to train, act, intervene and/or address racially discriminatory comments directed towards Plaintiff and so others similarly situated would create a hostile education environment for staff and students alike and a hostile working environment for Plaintiff and others so

unfortunate to be white in a predominately minority school district, a Jew and to not "belong" in HEMPSTEAD UNION FREE SCHOOL DISTRICT as so bluntly stated by Randy Stith to Plaintiff.

81. Plaintiff's February 12, 2018 letter to the New York State Commissioner of Education concerned discrimination in a public education setting for Defendants that are recipients of federal and state aid.

82. Plaintiff's February 12, 2018 letter to the New York State Commissioner of Education was concerning discrimination, a hostile education environment and the rebuke of Defendants, who acted jointly and severally, to further the discriminatory acts, statements and encouragement of Defendant Stith and other members of Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT and HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD who were indifferent, at best, if not complicit in the discriminatory statements made against Plaintiff for being a Jew.

83. Defendants' conduct, inclusive of Stith's admissions, evidence pervasive and systemic anti-Semitism for which Defendants, individually and collectively, were aware yet failed to correct.

84. Defendants, jointly and severally, knew and had reason to know Defendants were obligated to address, report, ameliorate and correct unlawful practices of discrimination and/or bring them to public attention but failed to do so.

85. Plaintiff's actions, in opposing discrimination, were not unique to Plaintiff and were demonstrably calculated to address, among other things, the treatment of the acting Superintendent who was ousted during his Jewish observance.

13

86. While Plaintiff was out due to blood pressure issues, Stith entered Plaintiff's office building with a security guard and had the treasurer Luz Valentin escorted out.

87. Defendants, individually and collectively, knew and had reason to know that the District had special counsel investigating claims of discrimination, inclusive of comments and statements made by Defendant Stith, individually and collectively on behalf of all Defendants, to tell Plaintiff that he and others similarly situated do not belong because of their race and/or color: White, Jewish persons.

88. Plaintiff returned the last week in February 2018. When he returned, the district's special counsel was waiting for Plaintiff to discuss Stith's anti-Semitic remarks.

89. Defendants, individually and collectively, knew and had reason to know that Stith made such remarks, encouraged others to engage in anti-Semitic behavior and did not address or ameliorate the hostile conditions created and sustained by Defendant Stith.

90. That Friday in the last week in February 2018, the District interrogated Plaintiff about his competence to perform his job, blaming him for things outside his control and that happened prior to his time in the district. Plaintiff excused himself and went to his doctor because his blood pressure was causing problems.

91. Plaintiff was then put on administrative leave on March 5, 2018 and banned from doing his job.

92. On April 19, 2018, the board decided to terminate Plaintiff effectively on or about May 21, 2018.

93. Plaintiff protested that the adverse employment actions taken against him were the result of intentional discrimination by Stith and the Defendants, individually and collectively, who were complicit if not participated in the animus Stith demonstrated and encouraged

14

within the Defendants District and publicly throughout the constituency of the School
District.

94. On May 28, Plaintiff was officially terminated by the district.

### CLAIMS FOR RELIEF

### AS AND FOR A FIRST CAUSE OF ACTION
*(Racial Discrimination, Hostile Work/Hostile Education Environment)*

95. Plaintiff repeats and realleges the allegations as if fully stated herein.

96. Defendants took actions against Plaintiff that materially altered the terms and conditions
of his employment.

97. As discussed above, Defendants demonstrated animus against Plaintiff and others white
Jewish persons working within the Defendant District.

98. Defendants, individually and collectively, treated Plaintiff different than other similarly
situated persons employed in a similar position based on his race, color and/or national
origin insofar as other persons not of the Jewish faith were not treated in such a fashion but
Plaintiff and other Jewish persons were.

99. Defendants, individually and collectively, jointly and severally, did take employment
action against Plaintiff in removing him from holiday parties and other gatherings.

100. Defendants, individually and collectively, jointly and severally, did take negative
employment action against Plaintiff in failing to notice Plaintiff for required meetings.

101. Defendants, individually and collectively, jointly and severally, did alter Plaintiff's
work environment and the greater education environment in telling Plaintiff who does
belong and who does not, that being white Jewish persons, belong within the Defendant
District.

102.     Defendants, individually and collectively, jointly and severally, actions were motivated by Plaintiff's race, religion, color and/or creed for which Stith encouraged and Defendants idly complied with anti-Semitic rousing and encouragement among a crowd of people, constituents of the Defendant District

103.     That the Defendants individually and/or collectively, jointly and/or severally, were deliberately indifferent to the harassment lodged against Plaintiff and others similarly situated.

104.     Based on the foregoing, Defendants subjected Plaintiff to disparate treatment on the basis of his religion, unlawfully discriminating against Plaintiff in the terms and conditions of his employment on the basis of his race, and retaliated against Plaintiff in violation of Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a-e et seq, , 42 U.S.C. § 1983.

105.     Indeed, Plaintiff, a white Jewish person, was not treated the same as black employees including but not limited to Rodney Gilmore subjecting Plaintiff to a Hostile Education Environment.

106.     Following, the Defendants Hempstead Union Free School District and Regina Armstrong individually and/or collectively, jointly and/or severally, were deliberately indifferent to the harassment.

107.     The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the racist motivated comments and attack upon the civil rights and liberty interests of Plaintiff created a separate and profoundly unequal work experience in the educational setting.

108.     Plaintiff, a white Jewish person, is within a protected class of persons.

16

109.     Plaintiff performed his job functions adequately.

110.     Plaintiff was qualified for the position he held with Defendants.

111.     Defendants, individually and collectively, jointly and severally, did take adverse employment action against Plaintiff culminating in his termination.

112.     Defendants, individually and collectively, jointly and severally, did act against Plaintiff and others similarly situated on the basis of their being a white Jewish person.

113.     The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the racist motivated comments, attacks, and instigations by, among others, Randy Stith, was so severe, pervasive, and objectively offensive that it deprived Plaintiff of a work environment free from harassment, discrimination, actual (i.e. gunshots) and perceived physical threats together with the security of a contract superintendent position.

114.     The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the racist motivated acts, attacks, comments and slurs by Randy Stith and others encouraged by Randy Stith (and for which the Defendants were complicit in such message) evidences discrimination against Plaintiff on the basis of race, that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the failure of the Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the racist motivated attack upon Plaintiff.

115.     Defendants, individually and/or collectively, jointly and/or severally, by their failure to take action to prevent or remediate the effects of the racist motivated

17

comments and attacks upon Jewish persons, generally, resulted in a hostile educational environment/hostile work environment for the Plaintiff.

116.     Defendants, individually and/or collectively, jointly and/or severally, by their failure to take action to prevent or remediate the effects of the racist motivated violence occasioned by, among other things, gunshots at a public meeting was continued by Defendants as opposed to ameliorated by Defendants.

117.     Defendants, all of them, had actual knowledge of the severe and discriminatory harassment suffered by Plaintiff and acted with deliberate indifference to such harassment.

118.     Defendants, all of them, have actual knowledge of the severe and discriminatory harassment that white-Jewish minorities continue to suffer and refuse to act to address such harassment and its known, true, threat of physical harm.

119.     Upon information and belief,     Defendants demonstrated and continue to demonstrate patterns of racial/ethnic disproportionality in addressing complaints of discrimination including the historic failure to treat white-Jewish persons who make complaints with equal respect, footing and action when those made by other similarly situated persons of color and, conversely, treat white-Jewish persons as equal in discipline or the lack of therein.

120.     The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the racist motivated attacks, acts, comments, suggestions, slurs and statements.

121.     Plaintiff, a white Jewish person, who complained of discrimination was subject to adverse employment action culminating in termination.

122.     Plaintiff was deprived of equal opportunity to enjoy the benefits of a work environment and school environment free from harassment, hostility and statements that would imply that white Jewish persons do not belong within the District.

123.     Plaintiff was segregated, treated differently and, in some instances, not made part of Defendants parties inclusive of the holiday party in December 2017 where Plaintiff was the only assistant superintendent not invited to attend.

124.     Among other things, Plaintiff was subjected to gunshots in a mandatory meeting during the course of his employment with Defendants.

125.     As opposed to address the antisemitic remarks of Randy Stith, Defendants, individually and collectively, jointly and severally, did take employment action against Plaintiff while taking no action whatsoever against Stith.

126.     Defendants individually and/or collectively, jointly and/or severally, acting under the custom and color of New York State in providing compulsory education, acting under color of state law, have failed to prevent or even punish the racist comments, encouragement and incitement among community members by Stith in the presence of the Defendants, all of them.

127.     Defendants, individually and/or collectively, jointly and/or severally, have acted together to conceal and cover up the unprovoked and unjustified racist motivated adverse employment actions against Plaintiff and others so similarly situated.

128.     Defendants, all of them, individually and/or collectively, jointly and/or severally, acting under the custom and color of New York State in providing compulsory education, having the duty and the authority and power to do so, failed to properly

19

and fairly investigate and review acts of discrimination, retaliation and creation of and maintenance of a Hostile Education/Work Environment

129.   Upon information and belief, Defendants HEMPSTEAD UNION FREE SCHOOL DISTRICT and HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD are beneficiaries of funds provided by the taxpayers of the United States and the State of New York and must comply with federal and state laws because they provide compulsory education laws of the State of New York.

130.   Defendants actions are the actual and proximate cause of Plaintiff's harm and damages, inclusive of employment benefits, monetary damages, emotional damages and other damages to be determined.

131.   Plaintiff seeks declaratory relief, equitably relief, monetary damages and other relief just and proper under these circumstances together with an award of reasonable attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### *(Racial Discrimination – 42 U.S.C. §§ 1985 and 1986)*

132.   Plaintiff repeats and realleges the allegations as if fully stated herein.

133.   That the conspiracy among the Defendants, individually and/or collectively, jointly and/or severally, was motivated by racial invidious discriminatory animus and all of the Defendants knew or should have known of Stith's actions and the racial animus existing and perpetuated in the Defendants school district.

134.   Defendants, individually and collectively, jointly and severally, did know that white Jewish persons were treated negatively, differently, than other persons within the District and continued to allow and foster actions to harm such persons.

135.    That the Defendants, individually and/or collectively, jointly and/or severally, had the authority and power to protect the Plaintiff and limit the injury and damage resulting from the racist motivated attacks and assault upon the civil rights and liberty interests of the Plaintiff, but they failed to do so.

136.    Defendants, individually and collectively, jointly and severally, did know that Stith's comments were made, publicly, and could have taken remedial action but failed to do so.

137.    Defendants, individually and collectively, jointly and severally, did feign an investigation was done to address such actions yet no meaningful action was taken to address Stith's actions or the District's indifference to racial animus.

138.    Defendants, individually and collectively, jointly and severally, did fail to report Stith's conduct and encouragement to New York State or to Law Enforcement.

139.    Defendants are all state actors.

140.    Defendants actions taken against Plaintiff were done under authority of law.

141.    Defendants actions taken against Plaintiff were done under color of state law.

142.    Upon information and belief, Defendants were mandatory reporters as per the policies promulgated and distributed by the District.

143.    That the Defendants, individually and/or collectively, jointly and/or severally, did not and still have failed to take appropriate action to address the civil rights suffer to Plaintiff, and other persons similarly situated, upon his civil rights and liberty interests.

21

144.     Defendants, individually and collectively, jointly and severally, did know that Plaintiff and/or Jewish persons suffered from the actions by Stith and others insofar as racial discrimination was not to be tolerated in any school(s) or within the District.

145.     Defendants, individually and collectively, jointly and severally, did foster and act together to foster as opposed to address and stop discrimination within the District.

146.     Defendants are the actual and proximate cause of the damages by such animus, discrimination, equal protection violations and conspiracy among the state actors to violate Plaintiff's civil rights.

147.     Plaintiff, accordingly, is entitled to monetary damages, punitive damages, attorney's fees and other relief just and proper under the circumstances inclusive of the appointment of a federal monitor to address the ongoing conspiracy among state actors to violate the civil and human rights of persons within the District.

### AS AND FOR A THIRD CAUSE OF ACTION
*(Racial Discrimination – 42 U.S.C. § 1981)*

148.     Plaintiff repeats and realleges the allegations as if fully stated herein.

149.     Plaintiff was a White Jewish employee who entered into contractual relationship with the Defendants.

150.     Defendants, individually and collectively, jointly and severally, did take employment action against Plaintiff depriving Plaintiff of the rights conferred upon others so similarly situated on the basis of his race, color and/or national origin.

151.     Plaintiff was denied the benefits of an employment contract as required by New York State law.

22

152.    Defendants, individually and collectively, jointly and severally, did fail to negotiate and allow Plaintiff the benefits of an employment contract on the basis of his race, color and/or national origin.

153.    Defendants, individually and collectively, jointly and severally, did intentionally discriminate against Plaintiff for being a white Jewish person.

154.    Defendants, individually and collectively, jointly and severally, did take employment action against Plaintiff because he was white and/or Jewish.

155.    Defendants, individually and collectively, jointly and severally, acted to ensure that the benefits of a contractual employment were not conferred upon Plaintiff by his unlawful termination and exclusion of the benefits of employment that were provided to other similarly situated persons who were not white and/or Jewish.

156.    Defendants actions were the actual and proximate cause of Plaintiff's damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### *(Equal Protection)*

157.    Plaintiff repeats and realleges the allegations as if fully stated herein.

158.    Plaintiff was similarly situated with other assistant superintendents who were African American and not Jewish.

159.    Defendants, individually and collectively, jointly and severally, did treat Plaintiff differently, excluding him from employment opportunities and harming Plaintiff with verbal attacks and statements that white Jewish persons did not belong in the District.

160.    Defendants, individually and collectively, jointly and severally, did treat Plaintiff differently than other persons who were not white or who were not of the Jewish religion.

161.    Defendants, individually and collectively, jointly and severally, did take employment action against Plaintiff once he complained of the discrimination he suffered.

162.    Defendants, individually and collectively, jointly and severally, did take adverse employment action against Plaintiff once he reported Randy Stith, a black/African American male member of the District.

163.    Defendants, individually and collectively, jointly and severally, did take action to harm Plaintiff and other persons so similarly situated in their observance of the Jewish Sabbath and religious requirements associated with the Jewish faith.

164.    Defendants, individually and collectively, jointly and severally, did take employment action against Plaintiff as the Superintendent for Business and operations but not

a.  **Superintendent for Business and Operations – WHO ELSE SIMILARLY STIATUTED**

165.    Based upon the foregoing, the actions and mistreatment of Plaintiff by all Defendants violate the Equal Protection Clause to the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C.§1983, because such acts were taken in accordance with Defendants" custom or practice of discriminating and/or selectively treating individuals.

166.    Defendants, individually and collectively, jointly and severally, did engage in practices so persistent and widespread that they constitute constructive acquiescence of the policymakers in violation of 42 U.S.C. § 1983.

**<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>**
*(Direct Participation and Aiding and Abetting of Individual Defendant)*

167.     Plaintiff repeats and realleges the allegations as if fully stated herein.

168.     Defendants, individually and collectively, jointly and severally, did foster and
         encourage Randy Stith in openly anti-Semetic remarks made by the public.

169.     Defendants, individually and collectively, jointly and severally, failed to address,
         admonish or punish Stith's openly racist comments made against persons of the Jewish
         faith.

170.     Defendants, individually and collectively, jointly and severally, did hear
         constituents and members of the public make racist comments against Jewish persons in
         the presence of Plaintiff, a Jewish person, yet did nothing in response.

171.     Defendants knew and had reason to know that Jewish persons may attend public
         meetings and that persons employed by the District were Jewish.

172.     Defendants, individually and collectively, jointly and severally, did foster and
         encourage anti-Semitic statements and actions by failing to intervene, by implicit
         encouragement, by inaction and overt statements if not actions that led up to the termination
         of Plaintiff and other similarly situated persons of the Jewish faith.

173.     Defendants, individually and collectively, jointly and severally, did state to the
         public that the Defendants had a duty to protect and address discrimination and failed.

174.     Defendants, individually and collectively, jointly and severally, did make careful
         omissions and calculated inaction in hearing anti-Semitic comments yet doing nothing
         about them.

175.     Defendants, individually and collectively, jointly and severally, did know of
         Plaintiff's complaint(s) of discrimination, retaliation and hostile working environment for

25

which Defendants chose to terminate as opposed to investigate Plaintiff and his complaints of discrimination that were bolstered by eye-witness accounts, reporting and Defendants presence when such statements were made and encouraged by, among others, Defendant Stith,

176.     Based on the foregoing, the individual Defendants directly participated in and/or tacitly condoned the discrimination and retaliation to which Plaintiff was subjected, violating 42 U.S.C.§1983.

**WHEREFORE**, Plaintiff demands judgement against Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which he is entitled, including but not limited to:

1.  Awarding reasonable attorney's fees and costs and disbursements of this action;

2.  Declaring that Defendants, individually and collectively, jointly and severally, did participate in unlawful discrimination, fostered discriminatory practices and maintained a Hostile Education Environment;

3.  Appointment of a federal monitor to address, ameliorate, train and retrain the Defendants to prevent unlawful discriminatory practices within the Defendants School District;

4.  Expungement of all unfavorable documentation contained in Plaintiff's file which is maintained by Defendant district; and

5.  Granting such other and further relief that the Court seems just and proper.

Further, Plaintiff requests a trial by jury.

26

Dated:  October 6, 2021
      New York, New York

Respectfully Submitted,

THE LAW OFFICE OF
ALAN J. SASSON
*Attorneys for Plaintiff*

By: *Jonathan Tand*
    Jonathan A. Tand

27