UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LAWRENCE DOBROFF,

                           Plaintiff,          Docket No. 21-cv-01567(DRH)(ST)

           -against-

HEMPSTEAD UNION FREE SCHOOL
DISTRICT, HEMPSTEAD UNION FREE
SCHOOL DISTRICT SCHOOL BOARD, RANDY
STITH, individually and in his official capacity, and
REGINA ARMSTRONG, individually and in her
official capacity,

                         Defendants.
-------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFF'S
MOTION TO AMEND THE AMENDED COMPLAINT PURSUANT TO FRCP RULE
15(a)**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

POINT I.     STANDARD OF REVIEW FOR A MOTION TO AMEND
.................................................................................................................... 2

POINT II.    THE PLAINTIFF'S MOTION TO AMEND SHOULD BE
DENIED ..................................................................................................... 3

A.   Plaintiff's First Cause Of Action For Racial Discrimination, Hostile
Work/Hostile Education Environment Pursuant 42 U.S.C. §§
2000a-e *et seq.* and 42 U.S.C. § 1983.............................................................. 3

  1.   Hostile Education Environment ...................................................................... 3

  2.   Claim Under Title VII Fails ........................................................................... 3

  3.   Hostile Work Environment Pursuant To 42 U.S.C. § 1983 Must
Fail ................................................................................................................. 5

     a)   No Policy Or Custom That Caused The Plaintiff's Injury ..................... 5

     b)   Plaintiff's Cause of Action Against Stith And Armstrong
Fail ........................................................................................................ 6

     c)   Armstrong Should Be Dismissed........................................................... 8

     d)   Stith Should Be Dismissed .................................................................... 9

B.   Plaintiff's Second Cause Of Action For Racial Discrimination – 42
U.S.C. §§ 1985 and 1986.................................................................................. 11

C.   Plaintiff's Third Cause Of Action For Racial Discrimination – 42
U.S.C. §§ 1981................................................................................................... 13

  1.   Similarly Situated Employees ...................................................................... 16

  2.   Selective Treatment Based On Race Or Religion With Intent To
Inhibit Or Punish The Exercise Of Constitutional Rights Or
Malicious Or Bad Faith Intent To Injure A Person ..................................... 16

i

3.  Allegations Of Retaliation ........................................................................... 17

E.  Plaintiff's Fifth Cause Of Action for Aiding and Abetting of
Individual Defendant .......................................................................................... 17

1.  There Are No Allegations Asserted Against Armstrong Of Direct
Participation Or Aiding And Abetting................................................... 18

2.  The Allegations Against Stith Are Insufficient To Plausibly State
A Claim Against Him For Direct Participation Or Aiding And
Abetting ........................................................................................................... 18

F.  No Allegations Support *Monell* Claims........................................................... 21

CONCLUSION................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir 1988)................................................................. 14

*AMTRAK v Morgan*, 536 US 101, 113 (2002) .............................................................................. 5

*Anthony v. City of NY*, 339 F.3d 129, 139 (2d Cir. 2003)............................................................. 23

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).................................................................................. 6

*B & M Serv. Sta. v. City of Norwich*, 2000 US Dist LEXIS 17218, at \*25-26 (D. Conn. 2000) ......................................................................................................................... 13

*Bd. of the County Comm'rs v. Brown*, 520 US, 397, 403-404 (1997).......................................... 5

*Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir 1996).......................................................................... 17

*Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir 1999) ....................................................... 14

*Butts v. NY Dept. of Hous. Preserv. & Dev.*, 990 F.2d 1397, 1401 (2d Cir 1993)............................................................................................................................................. 4

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999) ................................................ 3

*Farzan v. Bridgewater Assoc.*, 2017 US Dist LEXIS 9269, at \*36-37 (D. Conn. 2017) ........................................................................................................................................ 14

*Ferlito v. County of Suffolk*, 2012 US Dist LEXIS 127028, at \*5-8 (E.D.N.Y. 2012)...................................................................................................................... 21

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir 2013) .................................................................... 19

*Lubetsky v. Applied Card Sys.*, 296 F.3d 1301, 1306 (11th Cir. 2002) ................................... 10, 19

*Mian v Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir 1993).............................................................................................................................................. 12

*Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir 2019) ............................................................... 7

*Nofal v. Jumeirah Essex House*, 2010 US Dist LEXIS 128814, at \*14 (S.D.N.Y. 2010).................................................................................................................... 14

*O'Kane v Plainedge Union Free Sch. Dist.*, 2019 US Dist LEXIS 161018, at \*9 (E.D.N.Y. 2019)....................................................................................................... 7

*Pratesi v. NY State Unified Ct. Sys.*, 2010 US Dist LEXIS 11087, at *21
(E.D.N.Y. 2010) ........................................................................................................... 5, 9

*Roslyn Union Free Sch. Dist. v. Barkan*, 16 N.Y.3d 643 (2011) ........................................... 11, 20

*S.W. v. City of NY*, 46 F.Supp.3d 176, 189 (E.D.N.Y. 2014) .................................................. 19, 20

*Schwartz v. Brown*, 857 F.Supp. 291, 299 (S.D.N.Y. 1994) ....................................................... 17

*Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 105 (2d Cir 1978) ............................................. 4

*St. Francis Coll. V. Al-Khazraji*, 481 U.S. 604, 613 (1987) ......................................................... 14

*Troeger v. Ellenville Cent. Sch. Dist.*, 2016 US Dist LEXIS 127652, at *33-
34 (N.D.N.Y. 2016) ...................................................................................................... 15

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 795 (2d
Cir 2019) *cert. denied Waronker v. Hempstead Union Free Sch. Dist.*, __
U.S. __, 140 S.Ct 2669 (2020) .......................................................................................... 8

*Young v. County of Nassau*, 2012 US Dist LEXIS 16425, at *22-23
(E.D.N.Y. 2012) (Hurley, J.) ............................................................................................ 2

## Statutes

42 U.S.C. § 1985(2) ......................................................................................................... 12

42 U.S.C. § 1985(3) ......................................................................................................... 12

42 U.S.C. §1985(1) .......................................................................................................... 11

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Defendants HEMPSTEAD UNION FREE SCHOOL DISTRICT ("District"), HEMPSTEAD UNION FREE SCHOOL DISTRICT SCHOOL BOARD ("Board"), RANDY STITH ("Stith"), and REGINA ARMSTRONG ("Armstrong") (collectively referred to as "Defendants") in opposition to the Motion to Amend the Amended Complaint served by the Plaintiff LAWRENCE DOBROFF ("Plaintiff").

The Plaintiff, for the third time, has tried to plead claims against the Defendants, but for the third time has failed. The underlying facts regarding the Plaintiff's employment with the District does not set forth a plausible claim against the Defendants.

A review of the Plaintiff's N.Y. General Municipal Law § 50-h hearing transcript ("50-h Transcript" or "50-h Hearing"), which the Plaintiff relies upon to support the amended pleading (*see*, Plaintiff's Memorandum of Law in Support, at page 5) reveals that granting the Plaintiff permission amend the Amended Complaint once again would be futile.

The Plaintiff argues that "[a]ll the facts remain the same or Defendants were on notice of these facts as they were contained in the 50(h) deposition taken by Defendants counsel". Plaintiff's Memorandum of Law, at page 12.

However, as discussed at length in this Memorandum of Law, the 50-h Transcript contradicts the allegations contained in the Plaintiff's proposed second Amended Complaint. The Plaintiff's pleading is futile because the allegations in the proposed Second Amended Complaint are belied by the Plaintiff's own sworn testimony. Accordingly, the Plaintiff's Motion to Amend should be denied.

Finally, the Plaintiff spends several pages in his Memorandum of Law arguing against the Defendants' Motion to Dismiss. These arguments are late and should be rejected by the Court.

On July 8, 2021 the Defendant served its Motion to Dismiss. *See,* **Docket Number 17**. The Plaintiff sought numerous extensions of time to oppose the Motion, which were granted by the Court. *See,* **Docket Numbers 14, 15,** and **16**. In the Court's last electronic order granting permission to make the Motion to Amend, the Court refused to adjourn the Motion to Dismiss. *See,* **Electronic Order dated October 8, 2021**. When the Plaintiff failed to oppose the Motion pursuant to the Court's briefing schedule, the Plaintiff waived all arguments against the Motion to Dismiss.

As a result, the Defendants' Motion to Dismiss should be granted and the Plaintiff's Motion to Amend should be denied.

**POINT I.      STANDARD OF REVIEW FOR A MOTION TO AMEND**

In *Young v. County of Nassau*, 2012 US Dist LEXIS 16425, at *22-23 (E.D.N.Y. 2012) (Hurley, J.), this Court held:

> Under Rule 15(a), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "The standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6) motion to dismiss — namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." *Amna v. New York State Dep't of Health*, 2009 U.S. Dist. LEXIS 127139, *4 (E.D.N.Y. Sept. 3, 2009)(citation omitted).
>
> To survive a motion to dismiss [under 12(b)(6)], a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

2

The Plaintiff's proposed Amended Complaint is futile because it will not survive a Motion to Dismiss pursuant to FRCP Rule 12(b)(6). Accordingly, the Plaintiff's Motion to Amend should be denied.

**POINT II.    THE PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED**

    **A.    Plaintiff's First Cause Of Action For Racial Discrimination, Hostile Work/Hostile Education Environment Pursuant 42 U.S.C. §§ 2000a-c *et seq.* and 42 U.S.C. § 1983**

        1.    Hostile Education Environment

The Plaintiff has no claim for a hostile education environment as an employee of the District.

A hostile education environment protects students in federally funded programs which "acts with deliberate indifference to known acts of harassment in its programs or activities …. [The] harassment [has to be] so severe, pervasive and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999).

The Plaintiff has not pled that he was barred from any educational opportunity or benefit by the District. The Plaintiff was an employee of the District and not a student.

Accordingly, the Court must reject the Plaintiff's claim for hostile education environment.

        2.    Claim Under Title VII Fails

In *Dobroff v. Hempstead Union Free School District, et al.*, Docket Number 20-cv-4312, the Plaintiff's first case against the Defendants that was dismissed without prejudice, the Plaintiff filed a letter to the Court, dated January 18, 2021, in which the Plaintiff stated: "any claims or

causes of action relating to Title VII are withdrawn." **Exhibit A**, a copy of the January 18, 2021 letter.

Even though the Plaintiff withdrew his Title VII claims or causes of action, the Plaintiff re-asserted those claims in the proposed Second Amended Complaint. *See,* **Exhibit B,** a copy of the Plaintiff's Proposed Second Amended Complaint, at ¶ 104.

The Plaintiff's Title VII claim and cause of action is time barred.

The Plaintiff was terminated from his employment on April 19, 2018, with an effective date of May 21, 2018. *See,* **Exhibit B**, at ¶ 92.

The Plaintiff commenced this Action on March 24, 2021, 1,038 days after the effective date of his termination from the District.

"In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days." *Butts v. NY Dept. of Hous. Preserv. & Dev.*, 990 F.2d 1397, 1401 (2d Cir 1993).

In addition, the Plaintiff failed to file a Charge of Discrimination with the Equal Employment Opportunity Commission. "The filing of a timely EEOC charge is a necessary prerequisite to a Title VII action in the district court." *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 105 (2d Cir 1978).

Accordingly, the Plaintiff's claim and cause of action asserted pursuant to Title VII against the Defendants must be dismissed.

4

3.   Hostile Work Environment Pursuant To 42 U.S.C. § 1983 Must Fail

"Section 1983 claims which accrue in New York are governed by a three year statute of Limitations." *Pratesi v. NY State Unified Ct. Sys.*, 2010 US Dist LEXIS 11087, at *21 (E.D.N.Y. 2010).

The Plaintiff alleges that purported hostile events occurred in September 2017 (**Exhibit B**, at ¶¶ 40 through 52), January 2018 (**Exhibit B**, at ¶¶ 62 through 66) and in February 2018 (**Exhibit B**, at ¶¶ 88 through 90).

The Plaintiff commenced this Action on March 24, 2021.  Events that occurred before March 23, 2018 are barred by the statute of limitations.

In *AMTRAK v Morgan*, 536 US 101, 113 (2002), the Court held: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."

Accordingly, the Plaintiff's claim for hostile work environment is time barred.

However, if the Court determines that a part of or all of the Plaintiff's claim is not time barred, the Plaintiff's claim still fails.

a)   No Policy Or Custom That Caused The Plaintiff's Injury

The Plaintiff has failed to plausibly allege a policy or custom of the District that caused the Plaintiff injury.

In *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997), the Court held that

> [i]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's

5

> injury. See *Monell*, 436 U.S. at 694; *Pembaur*, 475 U.S. at 480-481; *Canton*, 489 U.S. at 389. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Monell*, 436 U.S. at 694. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. 436 U.S. at 690-691 (citing *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 167-168, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)).

The Plaintiff alleges that the District has a "custom of discrimination by Defendants that harmed Plaintiff and other white Jewish persons working or enrolled within the" District. **Exhibit B,** at ¶ 1. *See also,* **Exhibit B,** at ¶¶ 35, 36, 47, 52, 71, and 165.

The Plaintiff does not allege the basis for his conclusory allegation that the District has a "custom" of discriminating against white and/or Jewish persons.

The Plaintiff's allegation of a policy or custom of discrimination is conclusory and does not plausibly support a cause of action against the District for a violation of 42 U.S.C. § 1983.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, any claim against the District for a hostile work environment fails because the Plaintiff cannot show a specific policy or custom of the District that injured him.

    b)  <u>Plaintiff's Cause of Action Against Stith And Armstrong Fail</u>

The Plaintiff's causes of action against Stith and Armstrong similarly fail because he has not plausibly pled that their conduct created a sufficiently extensive hostile work environment or

that Stith's and/or Armstrong's discriminatory intent was the but-for cause of his hostile work environment.

In *O'Kane v Plainedge Union Free Sch. Dist.*, 2019 US Dist LEXIS 161018, at *9 (E.D.N.Y. 2019), the Court opined:

> A § 1983 hostile work environment claim based on the Equal Protection Clause has similar elements to a Title VII hostile work environment claim, requiring the plaintiff to show "(1) intentional harassment, (2) based on [the plaintiffs' membership in a protected class], (3) under color of state law, that is (4) sufficiently extensive to render the work environment hostile to plaintiff." *Dawson v. Cty. of Westchester*, 351 F. Supp. 2d 176, 194 (S.D.N.Y. 2004)..

In *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir 2019), the Court held

> a plaintiff pursuing a claim for employment discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory intent was a "but-for" cause of the adverse employment action or the hostile environment. It is insufficient to establish simply that invidious discrimination was "a motivating factor" of the offending conduct.

When asked about what was hostile about his work environment during his 50-h Hearing, the Plaintiff did not testify about any acts by Stith or Armstrong, but instead testified

> A.   I believe that the whole hostile environment going to Board meetings and listening to other community members makes for a very difficult work environment.
> Q.   That uncomfortable work environment, did that occur in the business office or in public meetings?
> A.   That occurred certainly in public meetings, not so much in the business office. Nobody said anything to me in the business office.
> Q.   So, the environment that you are talking about that was hostile, that was in public meetings?
> A.   Public meetings, yes.

**Exhibit C**, a copy of the Plaintiff's 50-h Hearing transcript, at page 37, lines 6-20.

The Plaintiff's hostile work environment was not his workplace, but the public meetings where the public addresses the Board of Education and the Defendant's administration.

In *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 795 (2d Cir 2019) *cert. denied Waronker v. Hempstead Union Free Sch. Dist.*, __ U.S. __, 140 S.Ct 2669 (2020) the Court rejected the allegation that "public abuse and humiliation" stemming from comments made by members of the public at the District's School Board meeting were sufficient to state a claim for a stigma-plus liberty interest claim. The same should be true for a hostile work environment cause of action.

c)   Armstrong Should Be Dismissed

In addition, the Plaintiff's testimony in his 50-h Hearing makes clear that Armstrong did not create a hostile work environment.

> Q.   As part of the Notice of Claim, you are naming Regina Armstrong as a respondent. What is the basis for claiming Regina Armstrong?
> A.   Ms. Armstrong was the superintendent responsible for the actions of the District.
> Q.   Did she do anything personally to you while you were employed that you are making a claim against her?
> A.   Well, I believe that her interactions or her lack of management put me in very bad spot. So, in that regard, yes.
> Q.   How did her "lack of management" put you in a bad spot?
> A.   She didn't act as a superintendent running the District.
> Q.   What did she do?
> A.   We hardly ever spoke in a substantive manner and Jack Bierwirth was basically running the show.

**Exhibit C,** at page 13, lines 6-24.

The Plaintiff's own testimony defeats any claim for hostile work environment against Armstrong. Armstrong did nothing to create a hostile work environment for the Plaintiff. Armstrong should be dismissed from this Action.

8

    d)  <u>Stith Should Be Dismissed</u>

The Plaintiff alleges that on five occasions, Stith made comments that the Plaintiff took as anti-Semitic, most of those comments were not directed at the Plaintiff, but at the District's former Superintendent of Schools, Shimon Waronker ("Waronker").

The Plaintiff alleges that Stith:

  (a)  In September 2017 entered the Plaintiff's office and "repeatedly said to Plaintiff that Waronker 'did not belong' in the district, indicating that the fact that Waronker was white and Jewish meant he didn't belong. Plaintiff was offended by Stith's remarks about Waronker as he is also white and Jewish." **Exhibit B**, at ¶¶ 40-43.

  (b)  In September 2017, Stith made comments about a meeting held on Sunday and not on a Saturday during Waronker's Sabbath, alleging that Stith stated "That's your Sabbath, and I don't care about your Sabbath." *See*, **Exhibit B**, at ¶¶ 48-52.

  (c)  In January 2018, "Stith sent emails to Plaintiff stating "we are watching you". **Exhibit B**, at ¶ 69.

  (d)  "Plaintiff responded to Stith and brought to Stith's attention his anti-Semitic responses on January 9, 2018." **Exhibit B**, at ¶ 69.

  (e)  "Plaintiff returned the last week in February 2018. When he returned, the district's special counsel was waiting for Plaintiff to discuss Stith's anti-Semitic remarks." **Exhibit B**, at ¶ 88.

Beside the fact that the acts complained of are statute of limitations barred (*Pratesi v. NY State Unified Ct. Sys.*, 2010 US Dist LEXIS 11087, at *21), there are no allegations that reflect a severe or pervasive hostile work environment. The Plaintiff alleges five discrete interactions with Stith – two in September 2017, two in January 2018, and one in February 2018. There are no allegations that there was any on-going or continuous harassment.

In addition, the Plaintiff's allegation that Stith's comment about Waronker that Waronker, not the Plaintiff, "did not belong" in the District was in some way an anti-Semitic statement is a

stretch and in any event, the statement was not made about the Plaintiff but about a different employee.

Despite the fact the Plaintiff alleges that Stith's comments were anti-Semitic, the Plaintiff testified that only in January 2018, when the Plaintiff sent Stith an email that he "didn't appreciate the anti-Semitic comments that he made" did Stith learn that the Plaintiff was Jewish in September 2017. *See,* **Exhibit C**, at page 34, line 8 through page 35, line 11.

The Plaintiff's own testimony contradicts the Plaintiff's allegations in the proposed Amended Second Complaint that Stith knew that the Plaintiff was Jewish. *See,* **Exhibit B**, at ¶¶ 39 and 41.

"[A]n employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion." *Lubetsky v. Applied Card Sys.,* 296 F.3d 1301, 1306 (11ᵗʰ Cir. 2002).

Accordingly, the September 2017 statements claimed to have been made by Stith cannot plausibly state a claim against Stith for creating a hostile work environment since Stith did not know, by the Plaintiff's own admission, that the Plaintiff was Jewish. *See,* **Exhibit C**, at page 35, lines 6-11; at page 34, lines 8-24.

Whether timely or not, the single conversation in September 2017 between Stith and Plaintiff does not plausibly state a claim against Stith for a hostile work enviroment.

The Plaintiff's allegation that Stith's emails to Plaintiff stating that "we are watching you" was in anyway anti-Semitic is wholly unreasonable.  The Plaintiff does not even allege that the phrase, "we are watching you" is anti-Semitic.

In fact, Stith, as a member of the District's Board of Education had a fiduciary duty to make sure the Plaintiff as the District's Assistant Superintendent of Business and Operations

(**Exhibit B**, at ¶ 27) was doing his job managing the District's finances. *See, Roslyn Union Free Sch. Dist. v. Barkan*, 16 N.Y.3d 643 (2011).

The Plaintiff's January 9, 2018 response to Stith, bringing to Stith's attention Stith's alleged anti-Semitic responses cannot be a hostile work environment, since the January 9, 2019 response was the Plaintiff's conduct, not Stith's conduct. *See,* **Exhibit B**, at ¶ 69.

Finally, the Plaintiff's allegation that when he returned from his high blood pressure issues, the District's special counsel investigated the Plaintiff's claims of anti-Semitic remarks by Stith cannot create a hostile work environment by Stith because it was the proper and appropriate process under the District's anti-discrimination policy. The District investigated the Plaintiff's claims of discrimination by Stith. *See,* **Exhibit D**, a copy of the District's anti-discrimination policy. If the District did not investigate it would have been violating its own policy and the Plaintiff would have alleged that the District failed to investigate.

Accordingly, there are no allegations contained in the Plaintiff's proposed Second Amended Complaint that plausibly state a claim against the District, the Board, Stith, or Armstrong for a hostile work environment pursuant to 42 U.S.C. § 1983. Accordingly, the Plaintiff's proposed Second Amended Complaint is futile.

**B.     Plaintiff's Second Cause Of Action For Racial Discrimination – 42 U.S.C. §§ 1985 and 1986**

The Plaintiff's Second Cause of Action is seeking redress for racial discrimination based upon 42 U.S.C. §§ 1985 and 1986.

Section 1985(1) seeks to protect against two or more persons conspiring to prevent anyone from performing or accepting or holding any office. *See,* 42 U.S.C. §1985(1). This provision does not apply to the Plaintiff or his allegations in the proposed Second Amended Complaint.

Section 1985(2) seeks to protect against the obstruction of justice, intimidation of a party, witness or a juror. *See,* 42 U.S.C. § 1985(2). This provision does not apply to the Plaintiff or his allegations in the proposed Second Amended Complaint.

Section 1985(3) seeks to protect against someone being deprived of rights or privileges as a citizen of the United States. *See,* 42 U.S.C. § 1985(3). This provision is the only one that could apply to the Plaintiff or his allegation in the proposed Second Amended Complaint, but examining the elements of the cause of action, the Plaintiff's proposed Second Cause of Action is futile since the allegations do not meet the elements of the claim.

In *Mian v Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir 1993), the Court opined:

> The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983). Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 829.
>
> Finally, § 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir. 1989). Thus, a § 1986 claim must be predicated upon a valid § 1985 claim. *See Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir.), *cert. denied*, 436 U.S. 906 (1978).
>
> We emphasize that an essential element to each cause of action is a requirement that the alleged discrimination took place because of the individual's race. At this point, Mian's complaint fails to offer more than conclusory allegations that he was discriminated against because of his race. *See Mazurek v. Wolcott Bd. of Educ.*, 815 F. Supp. 71, 77 (D. Conn. 1993) ("It is well established that mere

conclusory allegations are insufficient to establish a cause of action for a violation of civil rights.").

The Plaintiff does not plausible state a claim of a conspiracy to deprive the Plaintiff of equal protection of the laws, or of equal privileges and immunities under the laws. The Plaintiff does not plausible allege that anyone conspired against the Plaintiff or took any steps towards a conspiracy against the Plaintiff.

In *B & M Serv. Sta. v. City of Norwich*, 2000 US Dist LEXIS 17218, at *25-26 (D. Conn. 2000), the Court held:

> Section 1986 provides a cause of action against those who fail to prevent acts done in violation of section 1985. *See Mian*, 7 F.3d at 1088 (citations omitted). Thus, a section 1986 claim must be predicated upon a valid section 1985 claim. *Id.* The Second Circuit in *Mian* emphasized that an essential element of each statute is a requirement that the alleged discriminatory conduct took place because of the individual's race. *Id.*
>
> In the instant case, there are no allegations or evidence suggesting that the defendants' alleged conduct was motivated by racial animus towards the plaintiffs. Therefore, the plaintiffs' section 1985 claim fails as a matter of law. Additionally, because the existence of a valid section 1986 claim is contingent upon a valid section 1985 claim, the plaintiffs' section 1986 claim also fails as a matter of law.

Without a viable Section 1985 claim, the Plaintiff does not have a viable Section 1986 claim.

Accordingly, the Plaintiff's Second Cause of Action in the his proposed Second Amended Complaint is futile. The Plaintiff's Motion to Amend should be denied.

## C.    Plaintiff's Third Cause Of Action For Racial Discrimination – 42 U.S.C. §§ 1981

"To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to

discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir 1999).

The Plaintiff pleads that he was discriminated against because of his race and religion. *See,* **Exhibit B**, at ¶ 150.[1]   However, "Section 1981 deals with racial discrimination not religious discrimination." *Nofal v. Jumeirah Essex House*, 2010 US Dist LEXIS 128814, at *14 (S.D.N.Y. 2010).

"Section 1981 was intended to combat racial or ethnic discrimination, nothing more." *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir 1988).

"Unlike Title VII, section 1981 does not protect the characteristics of gender, sexual orientation, or family background, nor does it bar discrimination based solely on national origin or religion." *Farzan v. Bridgewater Assoc.*, 2017 US Dist LEXIS 9269, at *36-37 (D. Conn. 2017) (internal citations omitted).

"If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *St. Francis Coll. V. Al-Khazraji*, 481 U.S. 604, 613 (1987).

The Plaintiff's claim in his Third Cause of Action is limited to intentional discrimination based upon his race.

The Plaintiff alleges only that he was "denied the benefits of an employment contract as required by New York State law" and blames the lack of an employment contract on his religion, race, color and/or national origin. *See,* **Exhibit B**, at ¶¶ 151 through 155.

---

[1] While the Plaintiff alleges he was discriminated against based upon his national origin, nowhere in the Proposed Amended Complaint does the Plaintiff identify his national origin. *See,* **Exhibit B**. Accordingly, any claim for national origin discrimination would be futile because the Plaintiff has failed to plead an element of the *prima facie* case, namely, his national origin.

However, in his 50-h Hearing, the Plaintiff testified that

> Q.    Did you have an employment contract with the District?
> A.    Did not have any contract with the District, but that was in violation of the State Controller's guidelines.
> Q.    Do you know what specific guidelines it violated?
> A.    No, I don't know exactly. But, I was told that the Controller's Office came down on the District for not having contracts in place for the assistant superintendents. I was not the only assistant superintendent, none of the assistant superintendents had contracts.

**Exhibit C,** at page 12, lines 3-15.

The Plaintiff admitted that he was treated no different from any other Assistant Superintendents in the District. The Plaintiff's race had nothing to do with why he did not receive a contract with the District. No Assistant Superintendent received a contract.

The Plaintiff cannot plead a plausible claim for race discrimination pursuant to 42 U.S.C. § 1981. Accordingly, the Plaintiff's Second Amended Complaint is futile and the Plaintiff's Motion to Amend should be denied.

**D.    Plaintiff's Fourth Cause Of Action For Equal Protection**

In *Troeger v. Ellenville Cent. Sch. Dist.*, 2016 US Dist LEXIS 127652, at *33-34 (N.D.N.Y. 2016) the Court opined:

> To state an equal protection claim, a plaintiff must allege "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)). Here, Plaintiff's equal protection claim fails because, apart from conclusory allegations that other, unidentified individuals were "similarly situated," he has not specifically alleged that any similarly situated

> individuals were treated differently than he was. *See Richard v. Fischer*, 38 F. Supp. 3d 340, 354 (W.D.N.Y. 2014) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)) ("To allege a violation of the Equal Protection Clause, 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently'"); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) (quotation omitted) ("[W]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim"). Accordingly, Defendant's motion is granted on this ground and Plaintiff's equal protection claim is dismissed.

1.    Similarly Situated Employees

Nowhere in the Plaintiff's proposed Second Amended Complaint does the Plaintiff identify how the Plaintiff was selectively treated or when and how he was treated differently from any other similarly situated employee.

The Plaintiff does not even allege that there were any employees similarly situated to him while the Plaintiff was employed by the District. The District suggests that as the only Assistant Superintendent for Business and Operations (**Exhibit B**, at ¶ 27), there were no other similarly situated employees and therefore, there was no other person to whom the Plaintiff can compare his treatment to during his employment with the District.

Accordingly, the Plaintiff has not plausibly pled the first element of the cause of action for equal protection.

2.    Selective Treatment Based On Race Or Religion With Intent To Inhibit Or Punish The Exercise Of Constitutional Rights Or Malicious Or Bad Faith Intent To Injure A Person

The Plaintiff does not assert any allegations regarding how he was singled out in any way and how the alleged selective treatment was motivated by an intent to discriminate against the

16

Plaintiff on impermissible grounds, whether it was the Plaintiff's race or religion. *See, Schwartz v. Brown*, 857 F.Supp. 291, 299 (S.D.N.Y. 1994).

The only allegation is that "Defendants ... did take action to harm Plaintiff and other persons so similarly situated in their observation of the Jewish Sabbath and religious requirements associated with the Jewish faith." **Exhibit B,** at ¶ 163.

The Plaintiff does not allege that his observation of the Jewish Sabbath or any religious requirements that he held were impaired, effected, or interfered with by any act of the District, Armstrong, or Stith. As a result, the Plaintiff does not allege any facts to plausibly state a claim for a violation of the Equal Protection Clause.

    3.    <u>Allegations Of Retaliation</u>

The Plaintiff's allegations in the Fourth Cause of Action seem to suggest he was retaliated against because "he reported Randy Stith, a black/African American male member of the District" (**Exhibit B,** at ¶ 162) and that the Defendants took "employment action against Plaintiff once he complained of the discrimination he suffered." **Exhibit B,** at ¶ 161.

These allegations set forth in the Fourth Cause of Action seem to suggest a retaliation claim pursuant to Title VII, which is time barred. *See,* Point II.A.2. above.

Accordingly, the Plaintiff's proposed Fourth Cause of Action in the proposed Second Amended Complaint is futile and therefore, the Plaintiff's Motion to Amend should be denied.

**E.    Plaintiff's Fifth Cause Of Action for Aiding and Abetting of Individual . Defendant**

In *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir 1996), the Court held:

> a defendant in a § 1983 action may not be held liable for damages
> for constitutional violations merely because he held a high position
> of authority. *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

> 1994); *Leonhard v. United States*, 633 F.2d 599, 621 n.30 (2d Cir.
> 1980) (claim based on respondeat superior not cognizable under §
> 1983), *cert. denied*, 451 U.S. 908, 68 L. Ed. 2d 295, 101 S. Ct. 1975
> (1981). We have construed personal involvement for these purposes
> to mean direct participation, or failure to remedy the alleged wrong
> after learning of it, or creation of a policy or custom under which
> unconstitutional practices occurred, or gross negligence in
> managing subordinates. *See Wright v. Smith*, 21 F.3d at 501.

The Plaintiff names two individual defendants who he alleges directly participated in or aided and abetted the discrimination alleged in his proposed Second Amended Complaint. However, the Plaintiff fails to allege any facts that plausibly sets forth a claim against either individual for direct participation or aiding and abetting.

1. <u>There Are No Allegations Asserted Against Armstrong Of Direct Participation Or Aiding And Abetting</u>

The Plaintiff's allegation against Armstrong is a single allegation that she was in attendance when there was an inspection of a burst pipe on December 30, 2017. *See,* **Exhibit B,** at ¶ 61.

Other than identifying her as a defendant in this Action and alleging she is a policymaker of the District, there are no other allegations against Armstrong in the entire proposed Second Amended Complaint.

The single allegation that Armstrong was in attendance when a pipe burst on December 30, 2017 is insufficient to state a cause of action against her for either direct participation or aiding and abetting discrimination.

Accordingly, the Plaintiff's proposed Second Amended Complaint is futile as and for claims against Armstrong and therefore, the Plaintiff's Motion to Amend should be denied.

2. <u>The Allegations Against Stith Are Insufficient To Plausibly State A Claim Against Him For Direct Participation Or Aiding And Abetting</u>

The Plaintiff names Stith as a Defendant alleging that:

(a)     In September 2017 Stith entered the Plaintiff's office and Stith "repeatedly said to Plaintiff that Waronker 'did not belong' in the district, indicating that the fact that Waronker was white and Jewish meant he didn't belong. Plaintiff was offended by these remarks as he is also white and Jewish." **Exhibit B**, at ¶¶ 40-43.

(b)     In September 2017, Stith made comments about a meeting held on Sunday and not on a Saturday during Waronker's Sabbath, alleging that Stith stated "That's your Sabbath, and I don't care about your Sabbath." *See,* **Exhibit B**, at ¶¶ 48-52

(c)     "Stith sent emails to Plaintiff stating "we are watching you" in January 2018." **Exhibit B**, at ¶ 69.

(d)     "Plaintiff responded to Stith and brought to Stith's attention his anti-Semitic responses on January 9, 2018." **Exhibit B**, at ¶ 69.

(e)     "Plaintiff returned the last week in February 2018.  When he returned, the district's special counsel was waiting for Plaintiff to discuss Stith's anti-Semitic remarks." **Exhibit B**, at ¶ 88.

First, the Plaintiff testified that Stith did not know that the Plaintiff was Jewish until January 2018. *See,* **Exhibit C**, page 34, line 8 through page 35, line 11. As a result, the allegations regarding anti-Semitic comments in September 2017 cannot establish a plausible claim for direct participation or aiding and abetting.

"[A]n employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion." *Lubetsky v. Applied Card Sys.*, 296 F.3d at 1306.

Additionally, the September 2017 claimed statement may not be used as a basis for direct participation or aiding or abetting by Stith since the three-year statute of limitations on the claim expired. *See, Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir 2013).

The Plaintiff commenced this Action on March 24, 2021 (**Docket Entry No. 1**) more than three years after the conversation between Stith and Plaintiff. *See, S.W. v. City of NY*, 46 F.Supp.3d 176, 189 (E.D.N.Y. 2014) (holding "The statute of limitations for plaintiffs' § 1983 claims is thus three years.").

19

Whether timely or not, whether Stith knew the plaintiff was Jewish or not, the single conversation in September 2017 between Stith and Plaintiff does not plausibly state a claim against Stith for direct involvement or aiding and abetting.

The Plaintiff's allegation that Stith's emails to Plaintiff stating that "we are watching you" was in anyway anti-Semitic is wholly unreasonable. The Plaintiff does not even allege that the phrase, "we are watching you" is anti-Semitic.

In fact, Stith, as a member of the District's Board of Education had a fiduciary duty to make sure the Plaintiff as the District's Assistant Superintendent of Business and Operations (**Exhibit B**, at ¶ 7) was doing his job managing the District's finances. *See, Roslyn Union Free Sch. Dist. v. Barkan*, 16 N.Y.3d 643.

The Plaintiff's January 9, 2018 response to Stith, bringing to Stith's attention Stith's alleged anti-Semitic responses cannot be direct participation or aiding and abetting by Stith, since the January 9, 2019 response was the Plaintiff's conduct, not Stith's conduct. *See,* **Exhibit B**, at ¶ 69. In addition, the January 9, 2018 event was more than three years before the filing of this Action. *See, S.W. v. City of NY*, 46 F.Supp.3d at 189.

Finally, the Plaintiff's allegation that when he returned from his high blood pressure issues, the District's special counsel investigated the Plaintiff's claims of anti-Semitic remarks by Stith cannot be direct participation or aiding and abetting by Stith, was the proper and appropriate process under the District's anti-discrimination policy. The District investigated the Plaintiff's claims of discrimination by Stith. *See,* **Exhibit D**. If the District did not investigate it would have been violating its own policy and the Plaintiff would have alleged that the District failed to investigate.

Accordingly, there are no allegations contained in the Plaintiff's proposed Second Amended Complaint that plausibly state a claim against Stith for direct participation or aiding and abetting discrimination against the Plaintiff. Stith should be dismissed from this Action.

*********************

The Plaintiff's allegations in the proposed Second Amended Complaint fail to state a cause of action against Armstrong or Stith. Accordingly, granting the Plaintiff's Motion to Amend would be futile. Accordingly, the Motion to Amend should be denied.

F.      **No Allegations Support *Monell* Claims**

In *Ferlito v. County of Suffolk*, 2012 US Dist LEXIS 127028, at *5-8 (E.D.N.Y. 2012) the Court held:

> A municipality may not be held liable under section 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations. *See Monell*, 436 U.S. at 691; *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decisionmaking channels." *Monell*, 436 U.S. at 690-91. Therefore,
>
>> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.
>
> *Id.* at 694 (quoted by *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005)).
>
> The existence of a municipal policy or custom may be established in any of the following four ways. A plaintiff may demonstrate that his or her constitutional injuries arose from: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be

21

implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Williams v. City of Mt. Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)); *see also Bonds v. Suffolk County Sheriff's Dep't*, 2006 U.S. Dist. LEXIS 93607 (E.D.N.Y. Dec. 5, 2006) (same); *Peterson v. Tomaselli*, 2004 U.S. Dist. LEXIS 19765, 2004 WL 2211651, at *9 (S.D.N.Y. Sept. 30, 2004) (same).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). "Where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). A showing of deliberate indifference in this context entails three parts:

> (1) [that the] policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) [that] either [the] situation presents employees with [a] difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) [that the] wrong choice by employees will frequently cause deprivation of constitutional rights.

*County of Erie*, 654 F.3d at 334 (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

The Plaintiff does not cite in his proposed Second Amended Complaint any District policy that violated his constitutional rights. *See,* **Exhibit B**. The Plaintiff asserts in a conclusory manner that the District has a policy or custom of discriminating against employees (**Exhibit B**, at ¶¶ 36 and 52), however, there is no evidentiary support for such an outlandish allegation.

The Plaintiff does not identify any person who is a policymaker or a person with final decision-making authority in the District who violated the Plaintiff's constitutional rights.

> Actions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986). The individual must "be responsible for establishing final government policy" in order for municipal liability to attach. *Id.* at 483.

*Anthony v. City of NY*, 339 F.3d 129, 139 (2d Cir. 2003).

Accordingly, the Plaintiff's allegations against the District are insufficient as a matter of law and therefore, the Plaintiff's Motion to Amend should be denied because to grant the Motion would be futile because the Plaintiff has failed to plausibly plead a District policy or custom that served as a basis for a violation of the Plaintiff's civil rights.

Accordingly, any claims by the Plaintiff against the District should be dismissed.

## CONCLUSION

For the reasons argued in this Memorandum of Law, the Plaintiffs' Motion to Amend should be denied.

Dated:     Carle Place, New York
           December 10, 2021

Respectfully submitted

THE SCHER LAW FIRM, LLP

Austin Graff
*Attorneys for the Defendants*
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

23