UNITED STATES DISTRICT COURT                    <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAWRENCE DOBROFF,

                        Plaintiff,

      -against-                                  **<u>MEMORANDUM & ORDER</u>**
                                  21-CV-1567(JMA)(ST)

HEMPSTEAD UNION FREE SCHOOL
DISTRICT, HEMPSTEAD UNION FREE SCHOOL
DISTRICT BOARD, RANDY STITH,
individually and in his official capacity, and
REGINA ARMSTRONG, individually and in her
official capacity,

                       Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
Law Office of Alan J. Sasson
2012 Avenue Z, Suite 201
Brooklyn, New York 11235
By: Jonathan A. Tand, Esq.

**For Defendant:**
The Scher Law Firm
One Old Country Road, Suite 385
Carle Place, New York 11514
By: Austin Graff, Esq.


**AZRACK, United States District Judge:**

      Plaintiff Lawrence Dobroff ("Plaintiff") originally commenced this action

against the Hempstead Union Free School District (the "District"), the Hempstead

Union Free School District School Board (the "Board "), Randy Stith ("Stith") and

Regina Armstrong ("Armstrong") (collectively "Defendants"), asserting claims

pursuant to 42 U.S.C. § 1983 for religious discrimination[1] and violation of his Fourteenth Amendment right to equal protection. Presently before the Court are Defendants' unopposed motion to dismiss the amended complaint and Plaintiff's later filed motion for leave to file a second amended complaint. For the reasons set forth below, the motion to dismiss is granted and the motion to amend is denied.

## I.    PROCEDURAL BACKGROUND

Plaintiff commenced this action on March 24, 2021, with the filing of the complaint.[2] An amended complaint was then filed on May 25, 2021. By letter filed May 28, 2021, Defendants sought a pre-motion conference for their proposed motion to dismiss. By Order dated June 14, 2021, a briefing schedule for Defendants' proposed motion was set with the fully briefed motion to be filed on August 30, 2021.

Thereafter, Plaintiff sought two extensions of time to file his opposition papers. As a result, opposition papers were due on October 7, 2021. On October 7, 2021, Plaintiff filed a letter stating that in an effort to resolve the issues raised in Defendants' motion to dismiss, he intends to move for leave to file a second amended

---

[1] Although both the original complaint (DE 1) and the amended complaint (DE 11) caption the first cause of action as one for 'racial discrimination" the allegation in the ensuing paragraph in both documents state that " Defendants subjected Plaintiff to disparate treatment on the basis of his religion, unlawfully discriminating against Plaintiff in the terms and conditions of his employment on the basis of his religion and retaliated against Plaintiff in violation of 42 U.S.C. § 1983." *See* DE 1 at ¶ 21, DE 11 at ¶ 21

[2] The Court notes parenthetically that in an earlier filed action commenced on September 15, 2020, Plaintiff asserted a Title VII racial discrimination claim and a §1983 equal protection claim against the Board, Stith and Armstrong (E.D.N.Y. Civil Action No. 20-4312) based on a number of the same factual allegations made in this action. After Defendants sought leave to file a motion to dismiss, the parties stipulated to a dismissal without prejudice.

complaint and sought, with Defendants' consent, permission to file his moving papers in three weeks. In response, the Court set a briefing schedule for the motion to amend but stated that " the motion-to-amend briefing schedule does not affect the briefing schedule order for Defendants' motion to dismiss. That is to say, the motion-to-dismiss briefing schedule remains in place."

Plaintiff having failed to serve opposition papers to the motion to dismiss, Defendants filed their unopposed motion to dismiss on October 21, 2021. Thereafter, on January 6, 2022, the fully briefed motion for leave to file the second amended complaint was filed.[3]

## II.   FORMAT OF THIS DECISION

Given that Plaintiff sought to file a second amended complaint in order to resolve the issues raised in the motion to dismiss, as well as his failure to oppose Defendants' motion to dismiss the amended complaint, the Court shall begin with Plaintiff's motion for leave to file his proposed second amended complaint.

## III.   FACTUAL BACKGROUND

The following allegations are taken from the proposed second amended complaint ("PSAC").

Plaintiff was hired by the District as Assistant Superintendent of Business and Operations on July 27, 2017, by then Superintendent Shimon Waronker ("Waronker"). As such, he was responsible for "all things finance, managing facilities, food services, transportation etc." Plaintiff did not have any contract with the District,

---

[3] If one considers the earlier dismissed action, the proposed second amended complaint is Plaintiff's fourth attempt at pleading a plausible claim.

a claimed "violation of the State Controller's guidelines," but neither did any of the other Assistant Superintendents employed by the District. His first day of work was August 1, 2017. Waronker knew Plaintiff was a "white male Jewish person" and "others within Defendants' employ quickly learned that Plaintiff was Jewish and Plaintiff, did, at times, wear a yarmulke." (PSAC ¶¶ 27-32.)

"At the first or second school board meeting attended by Plaintiff, he witnessed constituents making numerous anti-Semitic comments about Waronker, saying 'Jews don't belong,' 'we don't want Jews here' and other such comments." "The anti-Semitic remarks occurred at all board meeting" but the Board "did nothing to stop or dissuade the torrent of anti-Semitic remarks." Stith, a member of the Board, "addressed and encouraged anti-Semitic comments at public meetings." (PSAC ¶¶ 33-34.)

In September 2017, at which time he knew that Plaintiff was a white Jewish person, Stith entered Plaintiff's office and repeatedly said to Plaintiff that Waronker "did not belong" in the district, "indicating that the fact that Waronker was white and Jewish meant he didn't belong." During that same period of time, "Stith made public comments inclusive of talking about how the superintendent had this meeting on a Sunday which was his sabbath and why did [sic] they have it on a Saturday." Stith stated "That's your Sabbath, and I don't care about your Sabbath." In response there were "anti-Semitic comments in the audience that received no admonition or response from Defendants." (PSAC ¶¶ 39-42, 48-52.)

In October 2017 Jack Bierworth ("Bierworth") was appointed by the Commissioner of Education to oversee the District. Bierworth waited for Waronker

to be out of the district for religious reasons and "then held a meeting to undermine Waronker." Bierworth also began having meetings with BOCES and others about the business department and intentionally leaving Plaintiff out of the meetings despite Plaintiff being in charge of these affairs for the District. "He did this because of Plaintiff's Jewish faith." (PSAC ¶¶ 53-56.)

"Things got markedly worse in November 2017" when "Lamont Johnson [("Johnson")] was added" to the Board. With the addition of Johnson, "the Board immediately set out to remove Waronker and all parties hired by Waronker."

Shortly thereafter, during the first week of January 2018, "new policies began to be published by the Board to eliminate Waronker." Plaintiff attended the January 9, 2018 Board meeting where Waronker was placed on administrative leave. At that meeting, the Board "attacked Waronker for not being present for an incident involving a burst pipe on December 30, 2017 despite knowing he was out due to his Jewish faith." (PSAC ¶¶ 62-64.)

With Waronker  gone, Stith turned his focus to Plaintiff.  In January 2018, Stith sent emails to Plaintiff stating "we are watching you."  (PSAC ¶ 69.)  Plaintiff "responded" to Stith's emails by bringing  to "Stith's attention his" alleged "anti-semitic responses" from the January 9, 2018 board meeting.  (*Id.*)

Plaintiff also alleges that he sent electronic mailings to Defendants "in January 2018 . . . protesting the discriminatory remarks made against Jews." (Amended Compl. ¶ 65.)  The PSAC, however, is vague about the timing of these

communications and does not allege that any of these communications occurred prior to Stith's "we are watching you" comment.

"Plaintiff unnerved by Stith's behavior, sent a complaint to Mary Ellen Elia, the New York State Commissioner of Education about Stith's behavior on or about February 12, 2018."Plaintiff alleges that Defendants became aware of the contents of the letter, "prior to Plaintiff's writing of the letter by either bearing witness to the discrimination or speaking to Plaintiff . . . ." (PSAC ¶¶ 66-69, 77-78.)

"While Plaintiff was out due to blood pressure issues, Stith entered Plaintiff's office building with a security guard and had the treasurer Luz Valentin escorted out." When Plaintiff returned the District's special counsel was waiting for Plaintiff to discuss Stith's anti-Semitic remarks. (PSAC ¶¶ 86-88.)

The Friday of the last week in February 2018, "the District interrogated Plaintiff about his competence to perform his job, blaming him for things outside his control and that happened prior to his time in the District. Plaintiff excused himself and went to his doctor because his blood pressure was causing problems." Plaintiff was then put on administrative leave on March 5, 2018 "and banned from doing his job." On April 19, 2018, the Board decided to terminate Plaintiff effective on or about May 21, 2018. "Plaintiff protested the adverse employment actions taken against him were the result of intentional discrimination by Stith and the Defendants, individually and collectively, who were complicit if not participated in the animus Stith demonstrated and encouraged within the District and publicly throughout the

constituency of the District." On May 28, 2018 Plaintiff was officially terminated by the District. (PSAC ¶¶ 86-94.)[4]

Plaintiff asserts the following causes of action: (1) racial discrimination, hostile work/ hostile education environment; (2) racial discrimination pursuant to 42 U.S.C. § 1985 and 1986; (3) racial discrimination pursuant to 42 U.S.C. § 1981; (4) equal protection pursuant to 42 U.S.C. § 1983; and (5) "Direct participation and aiding and abetting of individual defendants" pursuant to 42 U.S.C. § 1983.

## IV.    Relevant Standards

### A.    Motion to Amend

Federal Rule of Civil Procedure 15(a) provides, in pertinent part, that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend may properly be denied on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the proposed amendment. *See Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the decision whether to allow a party to amend its complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979).

---

[4] The Court notes that absent from the complaint are allegations as to the race or religion of any of the Defendants.

"One appropriate basis for evaluating the productivity of a proposed amendment lies in the relative futility of accepting the proposed amended complaint." *Wilson v. Toussie*, 260 F. Supp. 2d 530, 535 (E.D.N.Y. 2003); *accord Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999). If the proposed amendment would not survive a motion to dismiss, then it is appropriately denied as futile. *Wilson*, 260 F. Supp. 2d at 535 (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002)).

Given the foregoing the Court will evaluate the PSAC using the standard for a motion to dismiss.

### B.   Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facts which merely "create[] a suspicion of legally cognizable right of action" are insufficient." *Id.* at 555. A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "[M]ere conclusions of law or unwarranted deductions need not be accepted." *Bobrowsky v.*

*Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).

## V.   The Motion to Amend is Denied

### A.   The First Cause of Action

The first cause of action, entitled "Racial discrimination, hostile work/ hostile education environment,"  references only the following bases for the cause of action: Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a-e et seq. and 42 U.S.C. § 1983. Defendants maintain that the claim fails under both Title  VI and VII, as well as under 42 U.S.C. ¶ 1983. Plaintiff  does not address Title VII and therefor has abandoned any such claim.[5]

#### 1.   Hostile Education Environment

Turning then to the claim for a hostile education environment, Plaintiff maintains that as an employee of the school district, he has stated a claim for a hostile educational environment "pursuant to state[[6]] and federal law." The Court disagrees.

To the extent  that this claim is premised on Title VI, the claim fails. "Title VI prohibits intentional discrimination based on race in any program that receives

---

[5] Alternatively, as Defendants point out, the Title VII claim, is dismissible for failing to exhaust administrative remedies given the failure to file a charge of discrimination with the EEOC. *See Fowlkes v. Ironworkers Loc. 40,* 790 F.3d 378, 384 (2d Cir. 2015) ("It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court.*"); Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must . . . file a timely complaint with the EEOC.").

[6] Not only does Plaintiff fail to cite any state law to support a state law claim for a hostile educational environment, there is no such state law claim set forth in the complaint and, therefore, it will not be considered by the Court.

federal funding." *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). Title VI provides, however, that "[n]othing contained in [it] shall be construed to authorize action under [Title VI] . . . with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. "[T]his section essentially 'requires a logical nexus between the use of federal funds and the practice toward which [the] action is directed.' " *Johnson v. Cty. of Nassau*, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) (quoting *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981)). In the Title VI employment discrimination context, courts have construed Section 2000d-3 as imposing "a threshold requirement . . . that the employer be the recipient of federal funds aimed primarily at providing employment.*" Ass'n Against Discrimination in Employment, Inc.*, 647 F.2d at 276; *see also Sulehria v. New York*, 2014 WL 4716084, at \*5 (S.D.N.Y. Sept. 19, 2014) ("To state a claim under Title VI, a plaintiff must plausibly allege . . . that the federal funds have been made available primarily for providing employment.").

Here, the Amended Complaint simply alleges that the District is a recipient of federal funds. This allegation fails to plead the required nexus. *Bloomberg v. New York City Dept. of Ed.*, 410 F.Supp.3d 608, 625 (S.D.N.Y., 2019); *Verdi*, 306 F. Supp. 3d at 546 (Title VI claim dismissed because the "allegations regarding federal funding are bare and conclusory and do not describe the federal funding the DOE received, let alone link that funding to the students whose discrimination was the subject of

Plaintiff's complaints"). To the extent the first cause of action seeks to assert a federal hostile educational environment claim, the motion to amend is denied.

### 2. Hostile Work Environment

Proceeding to the § 1983 claim for a hostile work environment, at the motion to dismiss stage a plaintiff must "plead facts sufficient to support the conclusion that []he was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted).

To state a claim for a hostile work environment, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." *Patane*, 508 F.3d at 113. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive."). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014); *accord Littlejohn v. City of New York,* 795 F.3d 297, 321 (2d Cir. 2015) (stating that the offending incidents must be "more than episodic" and "sufficiently continuous and concerted in order to be deemed

pervasive."). "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret v. Zigarelli*, 451 F.3d 140, 149 (2d Cir. 2006). To determine whether a plaintiff has suffered from a hostile work environment, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., In*c., 510 U.S. at 23, 114 S. Ct. 367. "Although the presence of physical threats or impact on job performance are relevant to finding hostile work environment, their absence is by no means dispositive. Rather the overall severity and pervasiveness of discriminatory conduct must be considered." *Rasmy v. Marriot Int'l Inc.*, 952 F. 3d 379, 390 (2d Cir. 2020). *See also Patterson,* 375 F.3d at 227 ("Where reasonable jurors could disagree as to whether alleged incidents of racial insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law."). There must be a link between the actions by defendants and plaintiff's membership in a protected class. *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

The allegations of the PSAC are insufficient to support a hostile work environment claim. Putting aside all of the conclusory allegations, the complaint contains only the following specifics:  (1) anti-Semitic constituent remarks at board

meetings attended by Plaintiff which Stith "encouraged" (in an unspecified manner); (2) Stith telling Plaintiff that Waronker "did not belong" in the District; (3) Stith's comments in September 2017 about not caring about Waronker's Sabbath; (4) Stith's January 2018 emails stating "we are watching you;" and (5) upon his return to work in February 2018 the District's special counsel was waiting to discuss Stith's anti-Semitic remarks.

Notably none of the allegations involve Armstrong and, on that basis alone, the claim must be dismissed as to her. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), as amended (Feb. 24, 2016) ("The 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). The pleadings of acts by "Defendants" does not remedy this defect. Allegations as to all defendants generally, rather than specific to any individual defendant's role in the alleged constitutional violation, are insufficient to plead a claim against the individual. *Ojo v. United States*, 2019 WL 3852391, at *13 (Aug. 15, 2019 E.D.N.Y*.). See also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (a pleading that "lump[s] all defendants together in each claim and provid[es] no factual basis to distinguish their conduct" fails to provide the defendant with the requisite Rule 8 notice); *TheECheck.com, LLC v. NEMC Fin. Servs. Group Inc.,* 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) (same).[7]

---

[7] Indeed, the absence of any specific allegations as to Armstrong's participation in the events set forth in the PSAC requires dismissal of all claims against her.

As to Stith, while offensive, the remarks are not sufficiently severe or persuasive to support a hostile work environment claim. *See, e.g., Cadet v. Deutsche Bank Sec. Inc.,* 2013 WL 3090690, at *10 (S.D.N.Y. June 18, 2013) (finding that supervisor's three hostile and racially tinged comments about the plaintiff were stray remarks that were insufficient to support a hostile work environment claim); *Waldo v. N.Y.C. Health & Hosp. Corp.*, 2009 WL 2777003, at *6 (E.D.N.Y. Aug. 31, 2009) (rejecting the plaintiff's national-origin-based and gender-based hostile work environment claims based on a few stray remarks).

As the facts alleged are insufficient to support the 1983 hostile work environment claim.

### 3.    Discrimination

To state a discrimination claim under § 1983, two elements must be alleged: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega v. Hempstead School Dist.* 801 F.3d 72, 85 (2d Cir 2015). An employer discriminates against an employee by taking an adverse employment action, such as termination of employment. *Id.* An employer discriminates against an employee "because of" his race, color, religion, sex, or national origin under Section 1983 when the defendant's discriminatory intent was a "but-for" cause of the adverse employment action. *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019).

The alleged Anti-Semitic comments by audience members at Board meetings do not support a discriminatory animus on the part of the Board. Moreover, the allegations that "defendants" actively encouraged these comments are conclusory. No

specifics statements of encouragement by any defendant are set forth and the alleged silence of the "Board" in the circumstances alleged do not warrant an inference that Defendants adopted the audience's comments.

Nor do the alleged statements by Stith support an inference of discrimination. Stith's statement to Waronker that he "did not belong" does not, on its face, reference Waronker's race or religion. *Cf. Cano v. SEIU Local 32BJ*, 2021 WL 4927166 at * 9 (S.D.N.Y.  June 25, 2021) (statement that "you don't belong here, f------ Colombian," together with other derogatory remarks about plaintiff's race and gender, supported inference of discrimination), *report and recommendation adopted,* 2021 WL 4480274 (Sept. 30, 2021).  Nor does Stith's alleged statement to Waronker, "I don't care about your Sabbath,"  plausibly suggest that Plaintiff's termination was due to his race or religion. The allegation that after this comment Stith encouraged animus 'by increasing his tone, presence and asserting a hostile demeanor" is conclusory

It is alleged that Bierworth wanted to undermine Waronker and in order to do so held a meeting when Waronker was out of town due to religious reasons.  But  this allegation does not suggest that Bierworth wanted to undermine Waronker because of Waronker's religion.  Waronker's absence on religious grounds merely provided  the opportunity to hold a meeting without him in attendance.  Further the allegations that Bierworth left Plaintiff out of meetings "because of his Jewish faith"  lacks factual support.

The remaining allegations in support of this claim are conclusory and lack factual information which would make this claim plausible.  For example, it is alleged

that Plaintiff was treated differently than black employees, such as Rodney Gilmore, but no specifics of this purported disparate treatment are provided. Plaintiff also claims that he was the only assistant superintendent not invited to a holiday party but fails to specify the race or religion of the assistant superintendents that were invited.

Plaintiff's fourth attempt to state a claim for discrimination fails. The allegations are at best is "merely consistent with . . . defendant's liability and stop[] short of the line between possibility and plausibility of entitlement to relief. " *Iqbal*. 566 U.S. at 678 (internal quotation marks omitted).

### 4.    Retaliation

The complaint does not clearly allege a retaliation cause of action and Plaintiff's motion papers make only passing reference to a retaliation claim. On this basis alone, the Court rejects any retaliation claims.

But even if the complaint can be read to assert a retaliation claim, the factual allegations are insufficient to make it plausible.

In order to survive a motion to dismiss retaliation claims brought under § 1983, a plaintiff must plausibly allege that "(1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Vega v. Hempstead Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011). "A plaintiff engages in a protected activity when she opposes any practice made an unlawful employment practice . . . or because she has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Id.* (internal quotation marks omitted). An adverse employment action is a "materially adverse change" in the terms and conditions of employment, which is "a change in working conditions that is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' " *Id.* at 576 (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir 2000) ). "Examples of a materially adverse change include the termination of employment . . . ." *Id.* (internal quotation marks omitted).

Here, the Court assumes that the allegations that Plaintiff complained of Stith's discriminatory comments to Stith and others in January and February 2018 satisfies the protected activity element.[8] Further his termination satisfies the materially adverse element. However, the retaliation claim fails because the proposed second amended complaint does not plausibly allege a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive was a "but-for" cause of the adverse employment action. *See Myers v. Inspector Mary Christine Dougherty*, 2022 WL (2d Cir. Sept. 27, 2022) (citing *Vega v. Hempstead Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015)); *see also Kessler v. Westchester Cnty. Dep't of Social Servs.*, 461 F.3d 199-205-06 (2d Cir. 2006).

---

[8] The Court notes, however, that a defendant does not – as Plaintiff suggests – become aware of Plaintiff's protected activity, (specifically, the February 2018 letter sent to the Education Department), merely because the defendant witnessed the events underlying the complaint.

According to the proposed pleading, in November 2017, when Lamont Johnson joined the Board, the "Board immediately set out to remove Waronker and all parties hired by Waronker," indicating that the decision to remove Plaintiff, among others, was made well before he engaged in any protected activity in January 2018.[9] Where the decision for the alleged adverse employment action is made prior to Plaintiff's alleged protected activity, an inference of retaliation does not arise. *See Slattery v. Swiss Reinsur. Amer. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Chung v. City Univ. of New York*, 2014 WL 1146811, at *4 (S.D.N.Y. Aug. 27, 2014) ("Plaintiff's alleged protected activity cannot be the but-for cause of actions that were already allegedly being taken against Plaintiff before he engaged in the protected activity."), *aff'd*, 605 F. App'x 20 (2d Cir. 2015); *Greene v. Brentwood Union Free* Sch. Dist., 576 F. App'x 39, 42 (2d Cir. 2014) (concluding, in reviewing district court decision on summary judgment, that "[t]here is no possible causal nexus

---

[9] Plaintiff alleges that he "rebuked Stith's ['belong'] comments, disagreeing with his animus against Waronker and, impliedly, against other similarly situated white Jewish persons." (PSAC ¶ 46.) Plaintiff, however, has not plausibly alleged that this "rebuke" constituted protected activity or that Defendants "understood, or could reasonably have understood, that" Plaintiff's statement to Stith "was directed at conduct prohibited by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (quotation marks omitted). Plaintiff has not even alleged what, exactly, he said to Stith. Moreover, Plaintiff never identifies when this purported "rebuke" occurred. The PSAC is similarly vague about the timing of other events. S*ee, e.g.,* PSAC ¶¶ 65, 69. The absence of specificity as to the timing of these events, information presumably within Plaintiff's knowledge, further supports the implausibility of any retaliation claims.

between the protected activity and the adverse action" when complaints about discrimination were made after decision to recommend termination (internal quotation marks omitted)).

The proposed second amended fails to assert a plausible retaliation claim.

### B.  The Second Cause of Action

Plaintiff's second cause of action asserts racial discrimination pursuant to 42 U.S.C. §§ 1985(3)[10] and 1986.

"The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Bailey v. New York Law School,* 2021 WL 5500078 (2d Cir Nov. 24, 2021( (quoting *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993)); *accord Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action. *Id.*

Plaintiff's § 1985(1) claim fails because the PSAC does not plausibly allege a conspiracy. Nor, for the reasons stated earlier, does Plaintiff allege a plausible claim that his termination was motivated by his race.

---

[10] Although the complaint does not identify the subsection of § 1985 on which the claim is based, subsections 1 and 2 are facially inapplicable.

Plaintiff alleges "no facts upon which it may be plausibly inferred that the defendants came to an agreement to violate his constitutional rights." *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012). Plaintiff's conclusory assertion that Defendants "conspired," without any additional allegation to support a true meeting of the minds, is insufficient to state a claim for a conspiracy to violate his civil rights. *See Jackson v. Seewald*, 2013 WL 149341, at *12  (S.D.N.Y. Jan. 14, 2013) ("[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (internal quotation marks omitted)).

Moreover, the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claim against the Defendants because they are members of the same corporate entity. *See Pajazetovic v. City of Utica, New York*,  2021 WL 4440473, at *11 (N.D.N.Y. Sept. 27, 2021) ("Courts in the Second Circuit recognize the intracorporate conspiracy doctrine, which holds that the officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." (internal quotations omitted)); *Little v. City of New York*, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (dismissing conspiracy claims under the intra-corporate doctrine because "Plaintiff alleges that police officers conspired with each other to violate his rights, but all the police officers ... are part of a single corporate entity" (internal citation omitted)).

Accordingly, no Section 1985 claim has been stated. And because Section 1986 claims are derivative of Section 1985 claims, the Section 1986 claim cannot withstand

a motion to dismiss. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996). The motion to amend is denied as to the second cause of action.

### C.    The Third Cause of Action

The third cause of action is premised on Section 1981, which provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extractions of every kind, and to no other.

42 U.S.C. § 1981(a).  Under this statute, "make and enforce contracts" is defined to "include[ ] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Accordingly, any § 1981 claim "must initially identify an impaired 'contractual relationship' " pursuant to "which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quoting 42 U.S.C. § 1981(b)). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* The statute does not protect against alleged "discrimination on the basis of gender[,]  . . . religion, national origin, or age." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (internal citations omitted); *see Saint Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 613 (1987) (holding that § 1981 does not prohibit alleged discrimination as to religious expression). Section 1981 requires that race be the "but-for" cause of the

discriminatory conduct. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, --U.S. --, 140 S. Ct. 1009, 1013-19 (2020).

Here, the claim as framed by Plaintiff is that he "was denied the benefit of an employment contract as required by New York Law" and that Defendants "did fail to negotiate and allow Plaintiff the benefits of an employment contract on the basis of his race, color and/or national origin." (PSAC ¶ 28, 151, 152.) But the complaint also alleges that "none the District's Assistant Superintendents had employment contracts." (PSAC ¶ 29.)  Unless all the District's Assistant Superintendents were of the same race as Plaintiff ( a fact which is not alleged), the facts plead do not plausibly support but for causation on the basis of race.

The motion to amend is denied as to the third cause of action.

## D.     The Fourth Cause of Action

The fourth cause of action asserts a violation of Plaintiff's right to equal protection.

The mandate of the Fourteenth Amendment's Equal Protection Clause is essentially to prohibit the government from treating similarly situated individuals differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). A plaintiff must show "both that he was treated differently than other persons who were similarly situated and that such differential treatment was either without rational basis (a 'class of one' claim) or was motivated by an intent to

discriminate on an impermissible basis (a selective enforcement claim)." *Casciani v. Nesbitt*, 392 F. App'x 887, 888 (2d Cir. 2010); accord *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (An equal protection plaintiff must show "(1) [that he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."). To succeed on an equal protection claim, "it is axiomatic that plaintiff must [show] that similarly situated persons were treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994); *accord Gambino v. Village of Freeport*, 2022 WL 138065, at *11 (E.D.N.Y. Jan. 14, 2022) ("A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators.").

Plaintiff has failed to identify any similarly situated individuals. Rather he nonsensically refers to the allegation in the PSAC concerning anti-Semitic comments by constituents at Board meetings. To the extent he is attempting to assert that the lack of offensive comments as to other groups is evidence of similarly situated individuals beings treated differently, the argument fails. *See Green v. McLaughlin*, 480 F. App'x 44, 47–48 (2d Cir. 2012) (referring to broad categories, such as "other inmates with acute medical problems," is insufficient to show required extremely high degree of similarity for class of one claim); *Clark v. Kitt*, 2014 WL 4054284, *14 (S.D.N.Y. Aug.15, 2014) (reference to other retirement systems members in a general

and conclusory fashion without naming even one comparator failed to plausibly allege a violation of equal protection).

Having failed to allege even one comparator,[11] no equal protection claim has been stated and the motion to amend is denied as to the fourth cause of action.

### E.   The Fifth Cause of Action

The fifth cause of action is entitled "Direct Participation and Aiding and Abetting of Individual Defendant." As none of the alleged primary claims state a cause of action, this claim must fail as well.

## VI.   Defendants' Motion to Dismiss

Defendants' motion to dismiss is directed to the previously filed amended complaint which contains only 1983 claims based on equal protection and "race"[12] discrimination and  a claim for direct participation and aiding and abetting. For the same reasons that the PSAC fails to state causes of action for these claims, so too does the amended complaint. Accordingly, Defendants' motion to dismiss is granted.

---

[11] Interesting, the PSAC in ¶ 64 contains the incomplete sentiment that  Defendants "did take employment action against Plaintiff as the Superintendent  for Business and Operation but not," followed by the question "WHO ELSE SIMILARLY SITUATED" (capitalization in original).

[12] See n. 1 *supra.*

## CONCLUSION

Inasmuch as the PSAC fails to set forth any plausible cause of action, the

motion to amend is denied. In addition, Defendants' motion to dismiss is granted.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York                    /s/ (JMA)
       September 30, 2022                    Joan M. Azrack
                                        United States District Judge